Moulton v. Aldrich.

## G. L. MOULTON, *el al.*, *Partners*, &c., v. CYRUS ALDRICH.

1. RUNAWAY TEAM; *Damages; Liability.* Where a person lawfully at work upon a public street of a city, without fault on his part suffered damages from a team harnessed to a baggage wagon running away, *held*, that the owners were liable, it appearing that their driver and servant was negligent in leaving the team standing on the public street, insecurely hitched and unattended, while he was carrying a trunk from the wagon to a house, twenty to thirty feet distant.

2. DISPOSITION OF HORSES; *Character of Driver.* It is not necessary that a team of horses should have vicious propensities or be of restive disposition, to make the owner responsible for injury by it through the negligence of his servant; nor will proof that the servant was a careful and prudent man, of sober and steady habits and competent to discharge the duties incumbent upon him in his employment, necessarily relieve his employer of liability for injury resulting from his servant's negligence in the line of his employment.

3. FINDINGS AND VERDICT; *Insufficient Defense.* Where the findings of a jury are to the effect that the plaintiff received injuries on a public street of a city from a team running away, which had been negligently left standing on the street by the driver, unattended and insecurely hitched, and a general verdict for damages is rendered by the jury in favor of the plaintiff against the defendants having in their employment the driver, the defendants are not exonerated from liability by other findings that the team had no vicious propensities, was gentle and quiet and well adapted for the purpose for which it was being used, and that the driver was a careful, prudent man of sober, steady habits, and competent to discharge the duties incumbent upon him.

4. NEGLIGENCE, *Not Imputable.* Negligence is not imputable to a person for failing to look for a danger, when under the surrounding circumstances the person sought to be charged with it had no reason to suspect that danger was to be apprehended.

5. CONTRIBUTORY NEGLIGENCE, *Not Such as Debars Recovery.* Where a person engaged in hauling dirt with a team and wagon, along the side of the traveled part of a public street of a city, after depositing his load, drove his team upon the traveled portion of the street, which was from twenty-five to thirty feet wide, and after he had driven about forty or fifty feet upon the traveled part of the street was seriously injured by a runaway team coming from the south and behind him, he was not necessarily guilty of such contributory negligence as to debar him from recovering damages, because he did not, in coming upon the traveled part of the road, by the use of his eyesight and hearing discover, as he possibly could have done, the team in time to avoid being run over. A person

traveling upon a public street is not bound to anticipate that the driver of a team will neglect his duties; and it was not the duty of the party injured upon approaching the traveled part of the street to stop and look up and down the street to see whether any teams were running away.

6. CONTRIBUTORY NEGLIGENCE, *Not Chargeable.* The failure of a person driving along upon the public street of a city, run over from behind by a runaway team harnessed to a baggage wagon, to look behind him to discover the approaching team and wagon, will not, as a matter of law, render him chargeable with such contributory negligence as would prevent a recovery for injuries thus received.

7. PRACTICE; *Competent Evidence.* In an action for personal damages, the answer set forth a compromise and settlement between the parties of all supposed liability on the part of the defendants. To this answer plaintiff filed a general denial only. It was conceded that there was no written contract or agreement signed by the parties. *Held,* That it was competent on the part of the plaintiff upon the trial to introduce any facts under the general issue, showing he never made any compromise or settlement; and for this purpose it was competent for him to produce evidence that at the time of the alleged settlement with him he was delirious and wholly unconscious.

### *Error from Atchison District Court.*

ACTION brought by *Aldrich* against *Moulton* and two others, partners as Moulton & Yates, to recover $16,600 damages on account of certain injuries to plaintiff's person and property. Trial at the November Term, 1881, of the district court, and verdict and judgment for plaintiff for $3,450 and costs. The defendants bring the case here. The facts appear in the opinion.

*Everest & Waggener,* and *Smith & Solomon,* for plaintiffs in error:

1. The court below should have sustained the motion for judgment in favor of defendants, notwithstanding the general verdict. (23 Kas. 359, 360. See also 25 Kas. 36; 7 id. 308; 14 id. 37; 2 Daly, 389; 6 id. 212; 4 id. 487; 14 Minn. 96; 32 Ohio St. 498.)

An injured party is in no case relieved from the exercise and use of all his senses, and no fault of the other party can absolve him from this duty. He must look, listen and watch, and if he fails to do it in a case where by the exercise of his senses he could have avoided the injury, the law holds

him guilty of contributory negligence. (34 Iowa, 153; 54 id. 717; 41 N. Y. 296, 503; 39 id. 61, 358; 45 id. 195; 10 M. & W. 545; 11 East, 60; 28 Vt. 180; 36 id. 580; 14 Minn. 81.)

2. The testimony of the witness Johnston is the only evidence offered by the plaintiff, as to the manner in which the team was hitched.   The plaintiff "must be held to have believed each witness called by him credible, and to have so presented him to the court." (34 Iowa, 77; 71 N. Y. 152; 46 id. 683; 53 id. 230; 56 id. 590; 44 How. Pr. 472; 48 Ind. 170, 184; 8 Car. & P. 768; 17 N. J. L. 378; 7 Watts, 39; 53 Pa. St. 490; 15 Ark. 359.)

The testimony of Johnston shows no negligence on his part, and establishes beyond question contributory negligence on the part of the plaintiff.   The evidence — in the case throughout — on the part of the plaintiff and up to the time plaintiff rested his case, did not prove any cause of action against the defendants, and did prove contributory negligence on the part of the plaintiff. (2 Daly, 389; 4 id. 487; 6 id. 212; 14 Minn. 81.)

3. The court erred in refusing to permit defendants to prove the usual and customary manner of hitching teams in the city of Atchison.   This evidence was competent for the purpose of rebutting any inference of negligence that might be deduced from the evidence of the witness Johnston as to the manner in which he hitched the team.   And the court also erred in refusing to permit defendants to prove that the manner in which the team was in fact hitched, was sufficient and proper under the circumstances.

4. On the trial the defendants introduced evidence showing a settlement and adjustment of any supposed liability against them, and that in pursuance of such agreement they had paid out over $900 for him.   In rebuttal, over the objections of the defendants, the plaintiff was allowed to introduce evidence tending to show that at the time of the settlement claimed by defendants, he was, from the use of opiates and from pain, etc., mentally incapacitated from entering into

the contract or agreement of settlement. Defendants objected to this evidence, and moved to strike it out, as not being within the issues made by the pleadings. The court overruled all objections to it, and the motion to strike it out, and afterward instructed the jury that "if the plaintiff was delirious and unconscious" they should not treat the said agreement as a settlement.

In this we contend the court erred. (Code, § 102; Bliss on Code Pl., §§ 327, 352; 9 Minn. 200; 11 id. 174; Pomeroy's Legal Remedies, §§ 657–660; 26 Ind. 177; 47 Mo. 435; 48 id. 210; 39 id. 385.

5. The court erred in overruling the motion for a new trial, and especially upon the ground of newly-discovered evidence.

6. The court was asked to instruct the jury "that, in the absence of proof that the horses that ran away were of a restive character, or vicious habits, it would not be negligence of itself for the driver to leave them in the street *in the manner they were left.*" This instruction certainly should have been given. The owner is nowhere held liable for injuries inflicted by a domestic animal such as a horse, while running away from him upon the highway, . . . if he used ordinary care to prevent such escape. (Sherman & Redfield on Neg., § 194; 3 Allen, 564; 5 Car. & P. 410; 15 Pa. St. 188; 5 Bosw. 576; 80 N. Y. 217.)

7. The court did not fully charge the jury on the question of contributory negligence, and in a plain and perspicuous manner. The language used in instructions Nos. 9 and 10, asked for by defendants, and refused by the court, should have been given. (*Smith v. Rld. Co.,* 25 Kas. 738; *Rld. Co. v. Owen,* 25 id. 419; *Rld. Co. v. Plunkett,* 25 id. 189; 25 id. 56.)

*Webb & Martin,* for defendant in error:

The square question of negligence on the part of the defendants was asked the jury, and found affirmatively. (Ques. 43.)

On the subject of contributory negligence, the defendant be-

comes the plaintiff. He sues. He occupies the position of Henigh, in *Rld. Co. v. Henigh*, 23 Kas. 359, and of Haley in 25 Kas. 36. Negligence having been found by the jury in favor of Aldrich, and against Moulton & Yates, now to defeat Aldrich, it must be found against him, and in their favor. They must make a case against defendant in error.

No question was asked the jury by the plaintiffs in error, was it negligence in Aldrich *not* to discover it? By their general verdict they answer it the other way: they say it was not negligence. They do not ask the jury if he was improperly using his eyesight and hearing, or if they were not properly employed already. "Could he have discovered the runaway team in time," etc.? Yes, if he had anticipated that it would run away then and there, perhaps he might. "But no person is bound to anticipate something which is not likely to occur." (23 Kas. 358.)

Counsel for plaintiffs in error say that "negligence is not to be found without evidence: there is always a presumption against it." This applies to the defendants as well as the plaintiff. After the plaintiff has made his case and the defendants seek to defeat it by an affirmative defense, that affirmative defense must be proved. The plaintiff could have seen the approaching team, perhaps, if his attention had not been absorbed in his own dangerous situation. It is like a person engaged in a conflict with one before him, who receives a blow from behind. He had the right, without being chargeable with negligence, to act on the presumption that Moulton & Yates would not leave their team unhitched, and that it would not run away. (44 Wis. 643.) Usually, teams do not run away: they are ordinarily under control. Unless he failed to exercise that caution to avoid injury which would be necessary to avoid injury there in the usual condition of things at that point, he did not fail to use ordinary care. Even if he saw them, he had the right to try to save his own property. He was not compelled to abandon his own team to let it run away and be ruined, or to become responsible to someone else for a like injury himself. If he stayed with

his team to protect it, or to save others that might have been injured by his abandonment of it, he is to be commended rather than censured. (*Cottrell v. Rld. Co.*, 3 N. W. Rep. 376; 47 Wis. 66, 138, 637; 34 id. 362; 26 id. 59; 30 id. 413; 24 id. 386; 33 Iowa, 59.)

The motion for a new trial on the ground of newly-discovered evidence, if granted, would not change the result. (25 Kas. 139; 26 Mo. 603.) This motion ought not to be allowed, because the testimony is cumulative only. (24 Kas. 515; 26 Mo. 306, 603.)

The opinion of the court was delivered by

HORTON, C. J.: On and prior to August 19, 1880, it was part of the business of Moulton & Yates, defendants below, to transport baggage in the city of Atchison, and deliver the same at the depots and residences in the city, for which purpose they kept horses and wagons, and also employed drivers. On the said 19th day of August, one Thomas N. Johnston, a driver employed by them and in charge of two horses and a baggage wagon to which they were harnessed, was delivering a piece of baggage at a residence on South Fifth street in that city, when the horses ran away with the baggage wagon, northwardly on the street, and, when near the crossing of Park street, struck against the wagon of the defendant in error (plaintiff below) and broke it, and also inflicted severe personal injuries upon him. A few months thereafter this action was commenced by plaintiff below, to recover damages on account of the injuries to his person and property. Among other matters the petition charged that the driver was the servant of the defendants below, and that while acting in the line of his employment, he negligently, carelessly and wrongfully left the team without being properly hitched or fastened, and without being attended by any one; that while the team was unhitched and unattended the driver negligently went away from the horses, into a house on the street, and as there was nothing to prevent, they ran away.

It is contended by the counsel prosecuting this proceeding

20—28 KAS.

in error, that the special findings of the jury failed to show
any negligence on the part of defendants below, and did show
contributory negligence on the part of the injured party. To
establish that the defendants were not guilty of negligence
which caused the injury complained of, counsel assert that
there is no absolute rule of law that requires one who has a
horse in a street to tie him, or hold him by the reins, and
they refer to the special findings of the jury that the team
had been used three or four years in drawing omnibuses
and baggage wagons in the city, in close proximity to loco-
motives and moving trains; that it was gentle and quiet, and
well adapted for the purposes for which it was being used;
that it was without vicious propensities or restive disposition;
that it had never before been frightened or run away, or ever
exhibited any disposition or propensity to become frightened
or run away; that the driver had had charge of the team for
several months; that he was a careful and prudent person, of
sober and steady habits, and was competent to discharge the
duties devolving upon him by his employment; that there
was no hitching-post, or tree, or fence, to which the team
could have been fastened; that there was no object or thing
about the team where it was left to frighten or cause it to run
away; that the team was hitched to a large baggage wagon,
weighing from fourteen hundred to seventeen hundred pounds;
that the driver, when delivering the baggage, wound the reins
around the brake-rod, and did not go from the team a greater
distance than from twenty-five to thirty feet, and when the
team and baggage wagon were so left by him, the rear wheels
of the wagon rested in a ditch near the sidewalk, two and a
half feet deep and three feet wide. Counsel conclude from
all this, that the injuries were the result of an accident, un-
foreseen or fortuitous, and one which ordinary prudence could
not have guarded against.

We do not hold that the leaving of a team of horses in a
street, without being tied or held by the reins, is under all
circumstances, as a matter of law, negligence *per se*. It is
common for persons in a street doing business with horses,

to leave them standing in their immediate presence while attending to business, and it is not unlawful for them to do so, unless prohibited from so doing by an ordinance, or the authorities of the city. It is commonly safe so to do, and where the horse is in charge of a careful driver, and is neither vicious nor unmanageable, accidents are rarely occasioned thereby. The driver, however, in such cases ought to be near his horse, and in a condition to control him by his voice, and to reach him, if necessary, with his hand in an emergency. In this case, however, there were sufficient findings to establish culpable negligence on the part of the driver; and as he was the servant and employé of the defendants below, and acted in the line of his employment at the time, his employers are responsible for the injuries resulting from his negligence. The jury not only found that at the time the team started to run away, it was standing in a public street of the city without being securely fastened and without being attended by any one, but that the driver did not exercise reasonable and ordinary care in fastening the team; that he did not fasten it in the usual manner he had been in the habit of fastening the same, as he generally carried a weight for that purpose, and that it was negligence to leave the team in a public street of the city unhitched and unattended. Again, it appears from the findings that after the driver had driven his wagon in front of the dwelling-house where he was to deliver baggage, and had wound the reins around the brake-rod, he took from the wagon a trunk or box and carried it to the house, which was a distance of some twenty to thirty feet. It was at the time the driver was carrying the baggage to the house that the team started off; it soon got into a trot, and then began to run. At the time the team started the driver was not near enough to reach or stop it. He was not able to control the team by his voice when he started after it. With the baggage in his arms he was powerless to look after the team, and was unable to overtake it until plaintiff below had been run over. Clearly there was evidence tending to prove negligence, and it was

at all events sufficient for the jury to consider. They had the opportunity to do this.· An examination of the decisions fully justifies the findings of the jury, that defendants below were guilty of negligence. In *McCahill v. Kipp*, 2 E. D. Smith, 413, a horse in charge of the defendant's servant took fright from the act of a boy in carelessly throwing down a wheelbarrow, and ran away, bringing a cart attached to him in contact with a horse belonging to plaintiff. The evidence showed that at the time the horse became frightened, no efforts were made to guard against his running away, or by anyone having hold of him so as to prevent it. The servant in charge of the horse said he "seized hold of the horse after he ran, but could not hold him." The court said the evidence was sufficient to satisfy the jury of the defendant's negligence, as the defendant was responsible if he or his servant was guilty of any negligence which caused the injury. In *Illidge v. Goodwin*, 5 C. & P. 190, it was decided that if a horse and cart be left standing in the street without any person to watch them, and a person jostles against the horse and causes it to back against a shop window, the owner is liable for the damage, for he must take the risk of all the consequences that result from the horse being unattended. In *Dickson v. McCoy*, 39 N. Y. 400, where the plaintiff, a child of ten years, was passing the stable of the defendant upon the sidewalk of a populous street in the city of Troy, when defendant's horse came out of the stable, going loose and unattended, and in passing, kicked the plaintiff in the face, it appeared that the horse was young and playful, and there was no proof of a malicious or vicious disposition. The court said: "It is not necessary that a horse should be vicious, to make the owner responsible for injury done by him through the owner's negligence. The vice of the animal is an essential, if, only when but for it, the conduct of the owner would be free from fault. If the most gentle horse be driven so negligently as to do injury to person or property, the owner or driver will be responsible." Many other cases of like purport could be cited.

We pass now to the consideration of the question of contributory negligence. At the time of the injury complained of, plaintiff below was engaged in hauling dirt and helping make a fill on Fifth street. He was therefore engaged in a lawful work, and had a right to be upon the street with his wagon and horses. According to his evidence, he had unloaded his wagon, driven up on Fifth street, the usual wagon track to pass back and forth on, and while he was on the wagon, driving north, he was run over by the runaway team coming from the south, and he did not hear nor see the team coming behind him until it was upon him. The driver testified that plaintiff below was driving his wagon along Fifth street, going the same way the team was running; that he looked back towards the team when it was seventy-five or one hundred yards behind him, and jumped off his wagon on the left or west side, in front of the team running away. The jury found as a fact, that plaintiff below did not see the team after it started to run away until the collision.

Counsel however call special attention to certain findings, and strenuously contend that they establish that plaintiff's injury was the result of his own carelessness. These particular findings are as follows:

"4. Did plaintiff, on said 19th day of August, 1880, in depositing said dirt in said fill, enter said street from Park street, and drive his team below the level of the traveled portion of Fifth street? A. Yes.

"5. After unloading his wagon, and depositing said dirt, did plaintiff then drive his team up on to the traveled portion of said Fifth street? A. Yes.

"6. In driving up on to said Fifth street, did plaintiff's team face south on said street, then gradually turn towards the west, and around so that his team faced north on the narrow part or portion of the traveled part of Fifth street? A. Yes.

"7. When said plaintiff drove out of said fill onto said Fifth street, could he have seen several blocks south on said Fifth street? A. Yes.

"8. Did plaintiff then look south on said Fifth street? A. No.

"42. For some three hundred feet south of where plaintiff

was injured, was said Fifth street of uneven surface and covered with stone? A. Yes.

"43. After said plaintiff had come up out of said fill, could he by the proper use of his eyesight and hearing, have discovered said runaway team in time so that by the exercise of reasonable and ordinary care he could have avoided the injury complained of? A. Yes."

The only finding needing special comment is the one numbered 43, and this finding must be read in connection with the other special findings. Read in this connection, the finding may be interpreted to mean that when plaintiff drove his team up onto the traveled portion of Fifth street, he could then, after reaching said Fifth street and while his team was facing south, by the proper use of his eyesight and hearing have discovered the runaway team in time so that by the exercise of reasonable and ordinary care he could have avoided it. Other special findings show that the plaintiff, soon after he had reached the traveled part of Fifth street with his team from the part below the level thereof, had turned his team around so that it faced north on the traveled part of the street, and had driven north on the street about forty or fifty feet at the time he was run over; that at said time he was engaged in a lawful vocation; that the team which ran over him came from the corner of R and Fifth street, (south of and behind him,) and that he did not see the team after it started to run away before the collision. Considering the situation in which plaintiff below was placed at the time he was hurt, it appears to us, from a perusal of all the special findings, that the jury did not intend by finding No. 43 to attribute to the plaintiff negligence directly contributing to the injury complained of. In view of the other special findings, said finding cannot be interpreted to mean that at the time of being run over he could have avoided the team by·the proper use of his eyesight and hearing. Said finding seems to have reference only to the time of his coming up out of the fill upon the street, and not to the time he was driving north. With the interpretation that we have given to this finding, all the findings are in harmony with one another, and in harmony with the general

verdict. The failure of the plaintiff below, as he was driving upon the public street of the city, to look around him to discover an approaching team or wagon, would not, as a matter of law, render him chargeable with such contributory negligence as would prevent a recovery for injuries received from the team and wagon running over him. Under such circumstances a person would not be in a place to anticipate danger, and whether it was possible for plaintiff below to have looked up and down the street and have discovered the runaway team before the collision, is not necessarily controlling. He had the right, without being charged with negligence, to act upon the presumption that he would not be disturbed by a runaway team upon the public street. This is not like the case of a person who is wrongfully on the track of a railroad, knowing that a train passing over the track would necessarily pass over him unless he got out of the way, and who fails to look and listen for a train; nor is this case like that of a person approaching a railroad crossing upon a public highway, where, according to many of the authorities, before going upon such crossing he is bound to stop and look out for the train, and must not rush heedlessly nor remain unnecessarily on a spot over which the law allows engines to go to and fro. (*Reeves v. Rld. Co.*, 30 Pa. St. 464; see, however, *Rld. Co. v. Rice*, 10 Kas. 426.) The trial judge fully declared the law upon this point in the following language: "The plaintiff was not bound to anticipate that the defendants' servant would neglect his duty, nor that the defendants' horses would run away. It devolved upon him, however, to use that care which men usually do in driving a wagon along such a street, and to make use of his eyes and ears for his own protection and safety. If he did this, nothing more can properly be required of him. But if he saw or heard the runaway team overtaking or coming upon him, it was his duty to get out of the way if possible. If however it came upon him suddenly, and without warning, or by unusual noise or otherwise, for a sufficient time to enable him to get out of the way, or if the roadway at the place was so narrow and the

speed of the runaway team so great, that he could not get out of the way, then no negligence was attributable to the plaintiff to defeat a recovery." Even if the injured party had seen the team coming, and in trying to save his property had stayed upon his wagon a little too long for his own safety, and then without time for cool deliberation had jumped off the wagon on the wrong side, we would hesitate to disturb the verdict of the jury, as it is almost impossible to determine in such an emergency, as a matter of law, what a prudent man might do. It would be unjust to hold him negligent because the instinct of self-preservation did not instantaneously suggest the most effectual method of avoiding the team, and of escaping the impending danger. (*Shultz v. N. W. Rld. Co.*, 44 Wis. 638; *Cottrell v. Railway Co.*, 47 Wis. 634; *Ditburner v. Railway Co.*, 47 Wis. 138.)

Counsel assign as error the introduction of evidence tending to show that at the time of the alleged settlement and adjustment pleaded in the answer, the plaintiff below was mentally incapacitated from entering into any agreement. This upon the ground that the reply did not contain any new matter by way of confession and avoidance. The finding of the jury that there was no settlement agreed upon between the parties, and the further finding that the defendants below did not expend the money paid out by them for the use of the plaintiff below upon any contract, renders such evidence, even if incompetent, not very important. Had the jury found that there was a contract of settlement formally made, but that the plaintiff was mentally incompetent to make it, and it was therefore void, the question sought to be presented by counsel would be squarely before us. The reply denied the settlement as a fact. It is conceded that there was no release or agreement in writing signed by plaintiff below, as in *Rld. Co. v. Doyle*, 18 Kas. 58. Therefore evidence of facts showing it impossible for such party to have entered into any agreement, was competent. If plaintiff below was delirious and unconscious at the time of the pretended agreement, and never afterward while conscious assented to or ratified any

such agreement, then in fact there was no settlement or adjustment. The evidence that defendant below was mentally incapacitated from entering into a contract or agreement was not offered as new matter in the way of confession and avoidance, but offered and admitted under the reply to prove the fact that there was no compromise or settlement between the parties. It is clear to us that where an agreement has not been formally reduced to writing, any facts may be shown under the general issue which destroy the effect of the allegations of the execution of the contract. In such a case, the evidence is offered to disprove the facts alleged and denied — not that the allegations of the pleading are proved, and that there are other existing facts which avoid their effect. In Massachusetts the doctrine is still stronger. (See *Harris v. Carmody*, 15 Western Jurist, 564.)

Several exceptions were taken to the charge of the court, and also to the refusal of the court to give instructions prayed for by defendants below. We have carefully examined all of the instructions, and do not perceive that the law was not sufficiently declared for the purpose of this case. In a part of the charge the court used the following language: " But if said servant or driver was not then in the exercise of ordinary diligence, the plaintiff is entitled to recover, unless the defendants have established one of their said two defenses, viz., contributory negligence of the plaintiff, or a compromise adjustment and settlement between the parties." Taken alone, this part of the charge, unexplained, in a case where the evidence of the plaintiff tended to show him greatly guilty of contributory negligence as the proximate cause of the injury, might be misleading. But this language is to be construed with other portions of the charge; and as the court, prior to the giving of these words, directed the jury "that the burden of proof rested upon the plaintiff in the first instance to show that he was injured in person or property, and that the injury resulted from the negligence of the defendants' servant in the use of the horses and baggage wagon, and that it devolved upon him to show these facts by preponder-

ance of evidence," we see no cause of complaint. Of course, if the testimony of a plaintiff establishes that he is guilty of contributory negligence so as to debar him from recovering damages, it is not necessary that the defendants should establish over again, by their own testimony, such negligence. If the contributory negligence is established, either by the testimony of the plaintiff or of the defendants, the defense of such negligence is made out. The court in its charge, we suppose, merely intended to announce the rule laid down by this court, that the *onus probandi* as to the negligence of the plaintiff is on the defendants, and if the evidence produced by the plaintiff shows negligence on the part of the defendants and is silent as to the conduct of the plaintiff, it makes out a case for recovery. (*Railway Co. v. Pointer*, 14 Kas. 37.) As the jury specially found that plaintiff below did not see the team after it started to run away before the collision, and as negligence is not imputable to a person for failing to look out for danger when under the surrounding circumstances he has no reason to suspect any, defendants below could not have been prejudiced by the instruction as to the *onus probandi* of contributory negligence.

The newly-discovered evidence presented upon the application for a new trial is called to our attention, and the claim is made that the court erred in refusing to grant a new trial thereon. Such evidence, at most, was merely cumulative, and its introduction would not have necessarily changed the verdict. After a careful examination of the whole record and a consideration of every point presented, we are of the opinion that no substantial error appears. Judgments ought not to be reversed, except for errors which go to the merits, or in some way prejudice the rights of a party. Trifling matters that do not tend to mislead a jury or affect any party's right, are not grounds for reversal.

The judgment of the court will therefore be affirmed.

All the Justices concurring.