Monroe v. Lattin.

---

## CHARLES MONROE v. O. B. LATTIN.

1. DAMAGES; *Negligence; Jury; Supreme Court.* In an action to recover damages of the hirer of a horse, on account of negligence, the jury returned a general verdict against the defendant, and found specially that he was guilty of negligence in the care and management of the horse hired by him; that the horse was a safe one, but that he was notified by the plaintiff when he hired him that he was unsafe, and that his negligence consisted in his not having hold of the lines when he attempted to get into the buggy. *Held*, That the case was properly committed to the decision of the jury, and the supreme court cannot say, under the circumstances, as a matter of law, that the defendant was not negligent.

2. WITNESSES; *Facts; Opinions.* It is the general rule that witnesses must speak to facts, and that they are not allowed to give opinions, unless they are experts, and then only upon questions of science and skill.

3. OPINION OF WITNESS, *Inadmissible, When.* It is inadmissible to ask a witness as to his opinion, whether it would be negligence for the driver to leave a horse unhitched just long enough for him to get into the buggy, if the lines were upon the same side of the horse the driver intended to get in.

4. DAMAGES, *Measure of.* An instruction that the damage to the buggy and harness would be the difference in the value of the property before the injury and after the repairs, with the reasonable cost of the repairs, and value of use during repairs, *provided,* the damages did not exceed the value of the property, lays down a fair mode of measuring the damages. So also the difference in the value of a horse, injured by the negligence of another, before and after reasonable treatment for such injury, with the expense of the treatment and attendance, and value of the use of the animal during the treatment, all not to exceed the value of the animal, furnish one rule for assessment of the damages sustained by the injury.

### *Error from Leavenworth District Court.*

ACTION brought by *Lattin* against *Monroe,* to recover damages for injuries to a horse, buggy and harness. Trial and judgment for the plaintiff, February 10, 1879. The defendant brings the case to this court. The opinion states the facts.

*Charles Monroe,* plaintiff in error, for himself.

*E. Stillings,* and *William Dill,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: This was an action brought by defendant in error against plaintiff in error, upon the ground that plaintiff in error hired of him a horse, buggy and harness; that through his negligence the horse ran away, and that the horse, buggy and harness were damaged in the sum of five hundred and fifty dollars. The cause was tried before the court and a jury. The jury returned a verdict for defendant in error for $173, and also answered several special questions, submitted to them at the request of plaintiff in error. A motion for judgment over the verdict, as well as a motion for a new trial, was made, and overruled. Judgment was rendered for defendant in error, and now the following alleged errors are complained of to reverse the judgment: First,

overruling the motion for judgment; second, exclusion of evidence; third, admission of evidence; fourth, an instruction given by the court.

The special questions and answers are as follows:

"Q. 1. Was the defendant guilty of any negligence in the care and management of the horse hired by him of plaintiff? A. Yes.

"Q. 2. If yes, of what did such negligence consist? A. By reason of his not having hold of the lines when he attempted to get into the buggy.

"Q. 3. Was the horse hired by plaintiff a safe one? A. Yes.

"Q. 4. Did the plaintiff notify the defendant when he hired this horse, or at any other time, that he was unsafe? A. Yes.

"Q. 5. Did Mr. Lattin represent to defendant, at the time he hired this horse, that he was safe and gentle? A. No.

"Q. 6. Did the defendant unhitch the horse, back him a short distance, and then go directly from his head to the buggy and attempt to get in? A. Yes.

"Q. 7. Was defendant attempting to get in when the horse started? A. Yes.

"Q. 8. Had the defendant backed the horse before he started off? A. Yes.

"Q. 9. Was the accident the result of some cause unknown to the jury? A. No.

"Q. 10. Was the plaintiff, Mr. Lattin, guilty of any fault or negligence, contributing to the injury? A. No."

Upon the special questions and answers, plaintiff in error bases error in overruling the motion for judgment. His argument is, that while the jury in answer to one question said he was negligent, in their other and more detailed statements they said the reverse; that the finding that he did not have hold of the lines when he attempted to get into the buggy, in connection with the finding that the horse was a safe one, does not show he was negligent, but the opposite. We no not agree with the conclusion. As a matter of law, we cannot say that his attempting to get into the buggy without retaining any hold, either upon the horse or the reins, was not negligence. Plaintiff in error had been notified, when he hired the

23 — 25 KAS.

horse, that he was unsafe, and although in fact the animal was safe, the notice ought to have put him upon his guard. It is the observation and experience of the writer that the first inclination of a spirited horse, however safe the animal may be called, is usually to start, and often at a rapid rate, if unhitched, as soon as any person steps or jumps into the buggy or wagon behind. Different minds might honestly draw different conclusions from the circumstances as to the negligence; but the case, for that reason, should properly be left to the jury. "It is this class of cases, and those akin to it, that the law commits to the decision of a jury."

On the part of the defense, a former owner of the horse was asked: "Then you would not think it negligent, would you, to leave him unhitched just long enough for you to get into the buggy, if the lines are upon the same side of the horse you are going to get in?" The question was objected to, and the answer, "I would not consider it negligent," excluded. There was no error in this. If it was proposed to obtain the opinion of the witness as to whether plaintiff in error was negligent in his conduct — and this, we presume, was the object of the inquiry — it was inadmissible, because that was the very point in controversy, which it was the province of the jury to try and determine, under instructions of the court. It is a familiar rule that witnesses must speak to facts, and that they are not allowed to give opinions, unless they are experts, and then only upon questions of science and skill. The questions called for the witness's opinion as to a matter not involving professional skill or a question of science, concerning which the jury were to judge for themselves from the facts in evidence.

The instruction complained of is:

"If you find for the plaintiff, his damages would be the difference in value of the horse, buggy and harness before the injury and after the repairs, and reasonable time for treatment of the horse, and in addition, the reasonable cost of repairs, expense and attendance, and loss of use: *Provided*, The damages shall not exceed the value of the property."

Perhaps some verbal criticism might be fairly indulged in

concerning the language used in the instruction, but it is clearly apparent that the jury were not misled. No proof on the matter of damages was offered by the plaintiff in error. On the part of the defendant in error there was testimony that the harness which was destroyed was worth $50; that the buggy was lessened in value by the injuries from $50 to $70, and the horse from $80 to $160. The verdict was for $173; and under the evidence, if any recovery was had, even a larger sum might have been returned for the amount the property was actually lessened in value. Clearly, the owner of the property, if he was entitled to recover anything, was entitled to recover the amount the horse, buggy and harness were lessened in value by reason of the injuries; or, to express the idea in another form, the actual loss occasioned by such injuries. The difficult question is, what is a fair way to determine these damages? After such injuries, the property had no market value, and it is therefore troublesome to prove the worth of a broken buggy, or a blemished horse. The value of repairs to the buggy and harness must of necessity enter into the ascertainment of the difference in value before and after the injury. In the case of *Streett v. Laumier*, 34 Mo. 469, where the defendant's horse and wagon, by the carelessness and negligence of defendant's servant, ran against and injured the horse of the plaintiff, standing in the street, the measure of damage for which the defendant was liable was held to be the expenses of curing the horse of his injuries, the value of his services while being cured, and the difference between the value of the horse before the injury and after the cure. In *Gillett v. Western Railroad Corporation*, 8 Allen, 560, it was decided in an action to recover for injuries to a horse, sustained in consequence of a defect in a highway, that the plaintiff was entitled to recover the diminution, occasioned by the injury, in the market value of the horse at the commencement of the action, and, in addition, such sums as the plaintiff had paid out in reasonable attempts to cure him, with a reasonable compensation for his own services in attempting to cure him, and a reasonable sum as compensation for the loss of

the use of the horse while under such treatment, *provided,* that the whole damages allowed should not exceed the value of the horse. Other authorities are in the same direction. (Sedgwick on Damages, [7th ed.,] 315.) Hence, the instruction that the damages to the buggy and harness would be the difference in value of the property before the injury and after the repairs, with the reasonable cost of such repairs, and value of use, during the repairs, *provided,* the damages do not exceed the value of the property, lays down one mode, and a fair one, to estimate damages in actions like this. So, also, the difference in the value of the horse before and after reasonable treatment, with the expense of the treatment, and the value of the use during the treatment, all not to exceed the value of the animal, is a correct mode of measuring the damage for the injury to the horse. The testimony of the treatment and repairs after the action was commenced was not prejudicial, because it tended to diminish the extent of the injuries, and the amount of damages.

No error having been committed prejudicial to the rights of the party complaining, the judgment of the district court will be affirmed.

VALENTINE, J., concurring.

BREWER, J., dissenting.