## THE MISSOURI PACIFIC RAILWAY COMPANY v. PATRICK MACKEY.*

1. CONSTITUTIONAL LAW; *Ch. 93, Laws of 1874.* Chapter 93 of the Laws of 1874, which provides that railroad companies shall be liable for all damages to any of their employés, caused by the negligence of coëmployés, does not deny to railroad companies the equal protection of the law guaranteed by the fourteenth amendment to the constitution of the United States, and is not in conflict therewith. (*Mo. Pac. Rly. Co. v. Haley*, 25 Kas. 35; *Bucklew v. Central Iowa Rly. Co.*, S. C. of Iowa, 21 N. W. Rep. 103.)

2. ———— *Expert Testimony.* The inquiry of what are the general duties of a fireman on a switch engine in a certain track yard at a stated time, does not relate to a matter which is the subject of expert testimony, and upon which an opinion may be given, but is a question of fact which may be testified to by any witness having personal knowledge thereof.

[* REPORTER'S NOTE.—This case was decided at the March, 1885, session of the supreme court. It was removed by the *Mo. Pac. Rly. Co.* to the supreme court of the United States, on the ground that chapter 93, of the act approved February 26, 1874, (Laws of Kansas of 1874, p. 143,) is in conflict with that part of the fourteenth amendment to the constitution of the United States which reads as follows: ". . . No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property without due process of law, *nor deny to any person within its jurisdiction the equal protection of the laws.*"

Section 1 of said chapter 93, Laws of 1874, is as follows: "Every railroad company organized or doing business in this state shall be liable for all damages done to any employé of such company in consequence of any negligence of its agents, or by any mismanagement of its engineers or other employés, to any person sustaining such damage."

In the United States supreme court a motion was filed on behalf of defendant in error, *Patrick Mackey*, to dismiss the case on the ground that no federal question was involved therein, as is shown by the record. Messrs. *John C. Tomlinson* and *Thomas P. Fenlon*, attorneys for the motion, and Messrs. *Everest & Waggener*, *John F. Dillon*, and *Melville Egleston*, attorneys, *contra.* On May 4, 1885, the court overruled the motion to dismiss, and held the case for hearing on its merits.]

3. DUTIES OF FIREMAN, *How Shown.* While witnesses ought not to be permitted to express an opinion that a fireman upon an engine performed a certain service in the manner required of him in the proper discharge of his duty, yet it is competent for any witness having personal knowledge of the facts, to state what the duty is, or what services were generally performed by firemen in that yard.

4. RAILROAD EMPLOYÉ, *To Exercise Ordinary Care.* In an action against a railroad company by one of its employés, to recover for personal injury occasioned by the negligence of coemployés, the plaintiff is held only to the exercise of ordinary care to entitle him to recover—such care as men of ordinary judgment, intelligence and prudence would exercise under like circumstances; and an instruction that any negligence or slight negligence on the part of the plaintiff would prevent a recovery, would imply and hold the plaintiff to a higher degree of care than is by law required of him, and was properly refused.

5. EVIDENCE—*Ordinary Care.* The evidence considered, and held to be sufficient to show that plaintiff's injury was caused by the negligence of his coemployés, and also to sustain the finding of the jury that plaintiff was in the exercise of ordinary care at the time he received his injury.

6. UNDER EVIDENCE, *Verdict not Excessive.* An employé of a railroad company thirty-nine years of age, in good health, who was serving in the capacity of fireman on a locomotive, had his leg and foot crushed, making amputation necessary, and causing great and protracted suffering, impairing his general health, and after a lapse of more than two years the injury occasions him considerable nervous irritation and pain, which will probably increase and continue during his lifetime, was by the jury awarded damages in the amount of $12,000. *Held,* That under the circumstances, the verdict is not so excessive as to lead to a conclusion that the jury were actuated by passion, prejudice, or improper influences, nor to justify this court in setting the verdict aside.

*Error from Atchison District Court.*

ACTION brought by *Patrick Mackey* against *The Missouri Pacific Railway Company,* to recover damages for bodily injuries. Trial at the June Term, 1884, and judgment for plaintiff for $12,000 and costs. *The Company* brings the case here. The material facts are stated in the opinion.

*Everest & Waggener,* for plaintiff in error.

*John C. Tomlinson,* and *Thomas P. Fenlon,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: This action was brought by Patrick Mackey against the Missouri Pacific Railway Company, to recover for personal injuries sustained by him while employed by the defendant company as fireman upon a switch engine, and which injuries he alleges were occasioned solely by the gross carelessness and negligence of the employés of the railway company other than himself.

Among the facts about which there is little if any dispute, may be stated the following: The railway company has control of two track yards, in and adjacent to the city of Atchison, commonly designated as the "upper yard" and the "lower yard," and which are about one mile apart. On February 11, 1882, the defendant company was using and operating two switch engines with their crews in these yards in running and switching cars; the engine designated as number 166 being chiefly used in the upper yard, and the other, known as number 154, being principally used in the lower yard, although each engine also hauled and pushed cars from one yard to the other, and both engines and their crews were used in the common employment of the defendant. The plaintiff was serving as fireman on engine number 166. On the day the accident occurred, number 154 started from the lower yard with from ten to fifteen loaded cars for the purpose of placing them upon the side tracks in the upper yard, where engine number 166 was at the same time employed in transferring cars from one point to another in the upper yard. About the time that number 154, going westward, entered the upper yard, engine number 166 was backing eastward, when the two engines collided, wrecking the engines, and crushing plaintiff's foot and leg so that it became necessary to amputate it, which was done on that day. The collision occured on a bright clear day, between eleven and twelve o'clock in the forenoon. The ground was level, and the track was straight for a distance of about a quarter of a mile east of the point of collision, and the engi-

neer in charge of engine number 154 could have seen engine number 166 that distance, and he testifies that he did see engine number 166 at work in the upper yard while he was approaching, and when he was a thousand feet away, but he did not ring the bell, sound the whistle, or give any signal or warning of the approach of his engine, until he was within a few feet of engine number 166, and only three or four seconds before his engine collided with the other. No danger-signal or other warning was given of the approach of number 154, by the engineer in control of 166. Number 166, headed westward, had just pushed some cars west on the side track, and returning, backed down upon the main track a distance of four or five hundred feet to the point of collision. When 166 started to back down, the plaintiff tapped the bell several times, looking west in the meantime for signals from one of the crew, when he got down and began to break and shovel coal into the engine; while thus engaged he was bent over with his back toward the east, and just as he completed this work and straightened up for the purpose of taking his seat, the collision occurred.

The case has been twice tried in the district court of Atchison county. At the first trial a verdict was rendered awarding the plaintiff $11,000, in damages. This verdict was by the court set aside for error in the admission of testimony; and upon a second trial, occurring nearly a year afterward, a verdict was rendered in favor of the plaintiff for the sum of $12,000. Numerous errors are assigned and discussed by counsel for defendant, which we will consider.

I. It is first urged that if the plaintiff can recover at all, it must be under and by virtue of an act of the legislature approved February 26, 1874, which provides that: " Every railroad company organized or doing business in this state shall be liable for all damages done to any employé of such company, in consequence of any negligence of its agents, or by any mismanagement of its engineer or other employés, to any person sustaining such damage;" that under this statute a liability is attempted to be created against a railroad company where none

existed at common law, and that it subjects railroad corpora-
tions to liabilities and penalties not imposed upon other cor-
porations and persons under like circumstances.    It is argued
with great earnestness and ability, that railroad corporations
are therefore, by this statute, denied the equal protection of the
laws guaranteed by the fourteenth amendment to the constitu-
tion of the United States, and the statute should be held in-
valid.    That question was presented to this court in the case
of *The Missouri Pacific Rly. Co. v. Haley*, 25 Kas. 35.    In
that case it was decided, after full argument and a careful in-
vestigation of the question, that the statute is not in conflict
with the fourteenth amendment to the constitution of the
United States.    Upon a reëxamination of the question, we are
satisfied that it was correctly decided, but we think it would
be profitless to again review the authorities, or enter upon a
further discussion of the subject.    We must regard this ruling
as the settled law of the state, unless it shall be declared to be
erroneous by the supreme court of the United States.    We
might add, that in Iowa a similar statute exists.    Very re-
cently its validity was challenged upon the same grounds as
are urged here.    The supreme court of that state upheld the
statute, and in deciding the case said:

"The argument, briefly stated, is, that under the statute rail-
road corporations are subjected to penalties and liabilities, which
other persons and corporations engaged in like business are not
subjected to.    That the business of operating a railway is pe-
culiarly hazardous to employés engaged in the operation of the
road, must be admitted.    Counsel have not called our attention
to any business which is equally hazardous, and as the statute
is applicable to all corporations or persons engaged in operating
railroads, it seems to us it does not discriminate in favor of or
against any one.    We think it is a pure question of legislative
discretion, whether the same penalties or liabilities should be
applied to carriers by canal and stage coach, or to persons and
corporations using steam in manufactories, as is prescribed by
statute in relation to railroad companies.    The provisions of
section 30 of article 3 of the constitution of this state are quite
similar to the fourteenth amendment to the constitution of the
United States, if not in spirit identical, in so far as either can

be said to prohibit the legislature from conferring exclusive privileges on any person, or imposing penalties upon any corporation, which are not shared by others under like circumstances; and it was held in *McAunich v. M. & M. R. Co.*, 20 Iowa, 338, that the statute under consideration did not conflict with the constitution of this state, and for like reasons we do not think it conflicts with the constitution of the United States." (*Bucklew v. Cent. Ia. Rly. Co.*, 21 N. W. Rep., p. 103.)

II. A witness named John Steele was produced in behalf of plaintiff, who in response to questions gave the following testimony:

"Q. What business were you engaged in on the 11th of February, 1882? A. Running an engine on the Central Branch.

"Q. How long had you been running an engine there? A. About two years.

"Q. Had you any experience as a fireman before that time? A. Between three and four years.

"Q. Had any experience as a fireman on a switch engine at Atchison, Kansas, before that time? A. Yes, sir; fired a switch engine here in the yard for six months.

"Q. What was the general duty of a fireman on a switch engine, while the engine is being moved from one point to another in the yard, at that time?"

The defendant objected to the question last asked, stating as a ground of its objection that it called for the opinion of the witness without any proper foundation having been laid to ask the question; and further, that it was not a proper subject of expert testimony.

While we are inclined to agree with the counsel in their claim that the inquiry did not relate to that which was a subject of expert testimony, we still think that it was unobjectionable, and that the witness was competent to answer the same. It was not a question involving special skill or scientific knowledge. What the general duties of a fireman in the Atchison yards were, or, what is equivalent thereto, what duties were generally performed by firemen in the yards at that time, was a question of fact within the common observation of a great many people; and as stated by Chief Justice HORTON in *Monroe v. Lattin*, 25 Kas. 354, "it is a familiar rule that witnesses

must speak to facts, and that they are not allowed to give opinions, unless they are experts, and then only upon questions of science and skill."

The facts here inquired of are such that anyone having personal knowledge thereof is competent to testify to the same, no matter how such intelligence may have been gained. But it will be observed that the witness Steele assumed to speak from personal knowledge. The preliminary testimony given by him shows that his opportunity for learning the facts was ample. He was engaged as an engineer in the service of the defendant at the time Mackey was injured; had been running an engine for two years; had had experience as fireman between three and four years, and had actually served as a fireman on a switch engine at Atchison, Kansas, and in the yard where the plaintiff was injured. Possibly the master mechanic, yardmaster, or the person who had the direction and control of the firemen on these switch engines, might, by reason of their position and experience, have had more exact information upon the subject than this witness, yet the testimony of common observers upon such subjects is admissible so far as such observation goes. ( *Commonwealth v. Dorsey*, 103 Mass. 420; *Funston v. C. R. I. & P. R. Co.*, 61 Iowa, 452.)

Whether he was acquainted with the facts, or whether he stated them correctly, could have been inquired into by defendant, and tested upon cross-examination. The answer he gave was: "The duty of a fireman on an engine is to keep the engine hot, to keep steam on, and to assist the engineer in watching for signals."

It is claimed by counsel that this testimony was in effect an opinion of the witness that the plaintiff was in the exercise of ordinary care at the time the accident occurred. Not so. There was obviously no purpose to get from the witness his judgment, or an opinion in regard to the manner in which plaintiff had performed this work, or whether he was properly discharging his duty at the time of his injury, nor did the testimony given by him go to that extent. The inquiry went only to the work generally performed by a fireman on an engine in those yards

at that time. These facts might be testified to by anyone having personal knowledge of the same, and these, together with many others that were shown concerning the action of the plaintiff at the time of the accident, were proper and necessary to enable the jury to reach an opinion upon one of the leading issues in the case, whether there was contributory negligence on the part of the plaintiff.

In *Allen v. Railroad Co.*, 57 Iowa, 626, which was referred to by counsel in support of their objection, the court decided that while a witness ought not to be permitted to express an opinion that a *particular manner* of performing the services was required of a brakeman in the discharge of his duty, yet it was competent for the witness to state *as a fact* what services *were performed* by the brakeman in the discharge of his duty. It may be added, that testimony of a like character was offered on the part of the railway company, and all the testimony given in behalf of either party upon this subject agrees substantially with that given by the witness Steele.

We think there was no error in admitting this testimony; and what is said respecting its admissibility is applicable to other testimony of a like character objected to by defendant.

III. Objection is made by the defendant to the ruling of the court in restricting the cross-examination of the plaintiff. After he had testified in chief in relation to the work performed by him as fireman, the defendant asked him the following question upon cross-examination, which was objected to and excluded: "Did you consider it the proper discharge of your duty at that time for each of you to be looking west, and that train going east as fast as a man could walk?" Under the latitude which is usually allowed in the cross-examination of a plaintiff, we think the question might have been allowed without doing any injustice to the plaintiff. However, it was not strictly pertinent or material to the issue in the case. What he considered to be his duty was unimportant. The question was, what were his duties, and was he in the proper performance of the same at the time and immediately prior to the collision? There was no error in its exclusion.

20—33 KAS.

IV. Complaint is made of the refusal of the court to give certain instructions which were requested by the defendant on the trial of the case. A number of them relate to the law of contributory negligence, and its application to the facts of this case. Counsel for defendant say, that while the court in its general charge to the jury instructed them that contributory negligence on the part of the plaintiff would bar a recovery, yet it failed to instruct what degree of negligence would defeat the action. If the charge of the court had been given as stated, without explanation or qualification, it would appear that the plaintiff had cause of complaint rather than the defendant. It is only ordinary care that the plaintiff was bound to exercise, such care as men of ordinary judgment, intelligence and prudence would exercise under like circumstances. Slight negligence on his part is not enough to defeat a recovery, providing the negligence of his fellow-servant is established, and the term contributory negligence is broad and inclusive enough to embrace the slightest negligence. But the court in the instructions which it gave did not stop with the mere statement that contributory negligence would bar a recovery. The jury were told that it was not enough that the injuries were received by reason of the negligence of the fellow-servants of plaintiff; that the plaintiff could not recover unless it also appeared by a preponderance of the testimony that the plaintiff was in the exercise of ordinary care — such care and diligence as men in general exercise in respect to their own concerns under like circumstances. The court went farther, and in defining contributory negligence, and the duties of the plaintiff, directed the jury as follows:

"The plaintiff, in accepting employment as a fireman upon one of the defendant's yard engines, assumed the ordinary hazards of that occupation. It was his duty to take ordinary care to avoid danger to himself, and he had a right to assume that his fellow-servants engaged in the management and operation of said two engines and their respective trains, would exercise ordinary care toward him. But he had no right to assume that they would exercise extraordinary care, or the highest degree of diligence, to avoid injury to him."

"And if the jury find from the evidence that, under the circumstances, it was the duty of the plaintiff to look out for obstructions in the direction that his engine was running, and that if he had been in the exercise of ordinary care he would have seen engine No. 154 in time to have avoided the collision, but that he negligently omitted to keep a proper lookout, and his injury was the result of said negligence on his part, or the result of said negligence on his part together with the negligence of his fellow-servants, then the plaintiff is not entitled to recover, and your verdict should be in favor of the defendant."

Other of the instructions asked were to the effect that *any negligence* on the part of the plaintiff would prevent a recovery. These would imply and hold the plaintiff to a higher degree of care than is by the law required of him. He was not bound to exercise extraordinary care and prudence, and the instructions were properly refused.

Some other exceptions are taken by the defendant to the ruling of the court, both upon the instructions refused and given, but in view of the decisions heretofore made by this court we think it is needless to discuss them. It is enough to say that we have examined them carefully, and that every rule of law proper and necessary to be stated to the jury, embraced in those that were requested, was included in the instructions given to the jury, and that the charge of the court, in its entirety, states the law applicable to the case fully and clearly.

V. The defendant assigns as error the refusal of the court to submit a few special questions of fact. We have examined them, and find no error in the refusal. There were one hundred and thirty-nine special questions submitted to the jury, embracing almost every material fact in the case. Some of those that were requested were modified so as to make them harmonize with others allowed. A part of them had been submitted in different form, and the remainder of the questions refused do not appear to have been material.

VI. It is next urged that the court erred in overruling the motion for a new trial; that the testimony is not sufficient to show that the coëmployés of the defendant were culpably

negligent; and that it does show that the plaintiff was at fault, and that his negligence contributed to the injury.

The findings of fact returned by the jury all consistently show that the coëmployés of plaintiff could, by the exercise of ordinary care, have avoided the collision; and the further finding is made that the plaintiff was performing his duty, and in the use of ordinary care, when the accident occurred. We have read the testimony, and have reached the conclusion that it abundantly sustains the finding that the engineer in charge of engine number 154 was culpably negligent in the management of his engine.    He saw the other engine at work in the upper yard long before reaching it, but he came on at a speed of from four to six miles an hour, the other engine being all the time in plain view, and yet he never gave any signal or warning of his approach, nor did he make any effort to stop his engine until he was within a few feet of the other engine, and only two or three seconds of time elapsed between the sounding of the danger-signal and the collision.    There is no doubt from the evidence that he could have stopped his engine after the danger of collision became apparent to him.    Whether the engineer in charge of engine number 166 noticed the approach from the east of engine number 154, does not appear. His engine had been running backward and forward in the upper yard switching cars, and shortly before 154 came into the yard it had been pushing cars in the opposite direction from which engine number 154 was coming.    He then backed his engine east at the rate of from four to six miles an hour a distance of about five hundred feet to the point of collision.    Some reason may be found for his failure to observe the approach of engine number 154, though in backing that distance, and at that rate, in a track yard where other engines were employed, ordinary care and prudence would seem to require that he should have looked for obstructions in the direction in which he was moving.    It is strongly urged that it was equally the duty of plaintiff to keep a lookout for obstructions, and if he had done so the accident might have been avoided.

The evidence in the record tends to show that the engineer

has direct control of the engine, and that the fireman is under his direction as well; that the primary duty of plaintiff as fireman on a switch engine in that yard, as indicated by the name of the employment, was to fire the engine and to keep steam on, and when not thus engaged to assist the engineer to keep a lookout for signals from the crew, and for obstructions on the track. It also tends to show that just before the accident occurred, and when engine number 166 started to back east, the plaintiff was looking west, from which point he had been receiving signals from one of the crew, and after tapping the bell a few times, stepped down from his seat and began to break and shovel coal into the engine, and that while he was thus engaged he was stooped over and facing west, and could not have seen the approach of engine number 154, except by straightening up and turning around. It is said that if he had looked in the direction they were moving before he began to fire the engine, he would have observed number 154 coming, and failing to do so, he was at fault. This is not necessarily so. Engine number 154 was then about eight hundred feet away, and switch engines were frequently passing and repassing in the yard, and there was still ample time in which to stop the engines. Besides, the plaintiff had a right to presume that the engineers in charge of their respective engines would act with prudence, and would exercise reasonable care in the management of their engines. In the language of Chief Justice HORTON in *Moulton v. Aldrich*, 28 Kas. 300, "negligence is not attributable to a person, when under the surrounding circumstances he has no reason to suspect any." It is not claimed that the plaintiff was needlessly engaged in firing the engine, and the jury find that he was in the performance of his duty and in the exercise of ordinary care at the time his injury was received. In the face of this finding, based on the testimony recited, we cannot say that the plaintiff was guilty of negligence which contributed to his injury.

It is finally urged that the judgment should be reversed because the damages awarded to the plaintiff by the jury are

Mo. Pac. Rly. Co. v. Mackey.

excessive. We are free to state that the award made by the jury is exceedingly liberal, and perhaps too great; but under the circumstances of the case we cannot say that the amount is so disproportionate to the injury as to show that it was given as a result of passion or prejudice, or by reason of any improper influences having been exercised upon the jury.

The plaintiff was thirty-nine years of age at the time of the injury, with an able body and good health. His lower leg and foot was badly crushed, and was amputated about twelve inches below the knee; his suffering was great and protracted, so that he was confined to his bed for about two months, and he has been under medical treatment more or less ever since that time. It is stated by one of the physicians, who testified in the case, that as an effect of the amputation he has what is called degeneration of the nerves of the stump, and that he will probably suffer more or less pain from it during his lifetime; that it will affect his nerves, disturb his sleep, and impair his general health, with a likelihood that the affliction will increase with time. Another physician, who testified, stated that the plaintiff has not since the amputation been as strong as formerly; that he suffers pain; that the stump is unduly sensitive on account of the inflammatory action of the nerve, causing the surrounding muscles to be very sensitive, and as a result there is a constant irritation of the nerves; that this irritation and suffering will continue at least until another amputation is made; that in the present condition of his stump, he cannot wear a cork leg, nor will he ever be able to wear one without undergoing a secondary amputation, which would be attended with danger and with the risk that the same condition of the stump might exist afterward.

On all these considerations, the jury awarded the plaintiff twelve thousand dollars. A former jury allowed eleven thousand dollars. Considering these facts, together with other circumstances that need not be mentioned, we cannot say that the award is so excessive as to lead to the conclusion that the jury were actuated by passion, prejudice, or corruption. The ver-

dict was approved by the learned court that presided at the trial, and we do not feel that we would be justified in setting it aside.

The judgment of the court below must be affirmed.

VALENTINE, J.: I differ to some extent from my brethren, and radically from the Chief Justice, as to what constitutes knowledge of a primary character as contradistinguished from mere opinion, inference, or conclusion; and the decision in this case illustrates such difference. The court below, over the objection of the defendant, permitted John Steele, a witness for the plaintiff, to answer the following questions, to wit:

"1. What was the general duty of a fireman on a switch engine, while the 'engine is being moved from one point to another, in the yard at that time?

"2. Suppose at a given time the fireman is feeding his engine, is it his duty then to look out?

"3. State, *in the order in which they come*, what the general duties of a fireman on a switch engine were on the 11th day of February, 1882, when moving from one point to another in the yard?"

The court below also on the cross-examination of the plaintiff, who was a witness on his own behalf, and who had previously testified that he was a fireman on a railroad engine of the defendant, and had testified with regard to his duties as such fireman, sustained an objection of the plaintiff to the following question asked by the defendant, to wit:

"Did you consider it the proper discharge of your duty at the time for each of you to be looking west, and that train going east as fast as a man could walk?"

A majority of this court sustains all these rulings of the court below, upon the theory that the views or beliefs entertained by a person as to what constitute the duties of a fireman on a railroad engine are, when derived from personal observation, not merely matters of opinion or inference, but is knowledge of a primary character. In this I differ from my brethren. I believe that all mental conceptions or operations are merely opinions, inferences, or conclusions, except the di-

rect and immediate cognitions of the person's own primary senses.   And it is clear to my mind that no person can either see, hear, feel, taste or smell a duty.   His conception of duty when derived from personal observation is merely the result of inference, comparison, reasoning.

One of the questions which was to be proved on the trial of this case was, whether it was the duty of the plaintiff, while he (as fireman) and the engineer were operating a switch engine in the engine yard of the defendant, to look out for dangers, or not.   The defendant claims that such was his duty, and that if he had so looked out no injury would have occurred; while the plaintiff claims—first, that it was not his duty to so look out; and, second, that if such was his duty, still, "that in the order in which they [the duties] came," this duty was the last to be performed, and was to be performed only when he had nothing else to do; and that in the present case when the injury occurred he was already engaged in the performance of another and paramount duty.   All the foregoing questions were asked for the purpose of showing what was or what was not the duty of the plaintiff in this respect.   All the questions asked of the witness Steele are approved by a majority of this court, because, as a majority of this court holds, they were put to him in such a manner as to obtain evidence which is not opinion, or inference, or conclusion, but is evidence of a higher character.   Also, it is held by a majority of this court that the question put to the plaintiff himself on cross-examination might be excluded without error, because it was put to him, not to obtain his knowledge, but merely to elicit an opinion from him, or, in other words, to obtain what he *considered* to be his duty.   In all these matters, the majority of this court treats the mental conception of what is or is not a duty, when such conception is derived from personal observation, as original and primary knowledge, and not as opinion or inference or conclusion.   Hence the approval of the questions asked the witness Steele, and the disapproval of the question asked the plaintiff on cross-examination.

In my opinion, the mental conception of what are or what

are not the duties of a fireman, when the same is obtained from personal observation and experience, is merely the opinion of the person who entertains such conception. One cannot see a duty, nor hear it, nor feel it, nor taste it, nor smell it, nor can he have any conception of it except by inference, comparison, reasoning. His first observation of the work of a fireman might lead him to think one way, a second another, and so on indefinitely. His first observation might lead him to think that it was the duty of the fireman to look out for dangers in a case like this; a second might lead him to think otherwise; a third might lead him to modify both of his former opinions; and a fourth might lead him to still further modify, and so on indefinitely. His inference from his first observation would of course be worth but little; but its value would be increased with every observation; and after many observations and a varied and extended experience the inference would become exceedingly valuable. The mental process leading to such inference would be in such a case a vast induction. Of course if the mental conception of duty is primary knowledge, there is no necessity for laying any foundation for the introduction of evidence to prove such duty; for a person may always testify with respect to his primary knowledge—that is, with respect to what he has seen, heard, etc., without any preliminary proof being offered; and he may testify with regard to what he has seen, heard, etc., although he may not have seen or heard the same more than once. Could he testify as to what the duties of a fireman on a railroad engine are or are not, if he had never seen an engine operated more than once?

Some of the duties of firemen on railroad engines may come within the common knowledge of people in general, and if they do the courts may then take judicial notice of them without proof. Others, undoubtedly, are matters of experience and skill, and come within the knowledge of a class of persons only, usually called experts, and can be testified to only by such class. And others still may not be matters of judicial knowledge at all, nor the subjects of expert testimony at all, but can be proved only by proof of the detailed facts which tend to show

what they are.   And then it is the duty of the jury to determine what the duties are.   There are cases where ordinary witnesses may testify to opinions, but it is not necessary now to mention them.   My opinion on these subjects is more explicitly stated in the case of *The City of Parsons v. Lindsay*, 26 Kas. 426, 432.   My opinion is also shown in the case of *Monroe v. Lattin*, 25 Kas. 351.

I am inclined to think that a sufficient foundation was laid for the introduction of Steele's testimony, provided a foundation would render it competent; and I also think that the question asked the plaintiff on cross-examination, included an assumption of the existence of a fact not warrrnted by the previous evidence; and therefore, with considerable doubt, I shall concur in affirming the judgment of the court below.

HORTON, C. J. : I concur in the judgment in the foregoing case, but deem it important to add a few words to what has already been stated by the other members of the court.

As to the affirmance of the judgment below, it is immaterial, in my opinion, whether the answers given by Steele to the questions propounded him were matters of opinion, or of personal knowledge.   If the questions put to him were for the purpose of obtaining his opinion only, then he was competent as an expert to testify.   The evidence shows that he was engaged as an engineer in the service of the railroad company at the time the plaintiff was injured; that before the injury, he had worked three or four years as a fireman, and had actually worked as a fireman for several months on a switch engine in the yard of the railroad company at Atchison, and in the identical yard where the plaintiff was injured.   Therefore, Steele, strictly speaking, was one who, by practice and observation, had become experienced in the duties of a fireman. But I do not think that the questions put to Steele were intended to obtain merely his opinion of the matters inquired of, but were intended to elicit from him facts of which he had personal knowledge.   Therefore the question arises, whether a witness who has actual knowledge may testify what the gen-

eral duties of a servant or employé are. Worcester, among his other definitions, defines duty as follows: "Any service, business, or office." A like definition is given in the Imperial Dictionary, vol. 2, 114. When we speak of duty as applied to a servant or employé, the matter involves his service or business. We intend to refer to what he does in his services or business. When we ask a servant what his general duties are, we intend to ask him what services or work he generally performs. If I advertise for a servant to attend to my room, and the applicant, in answer thereto, calls upon me and asks "what his general duties are to be," he does not intend for me to guess or merely give an opinion, but he does seek, by the inquiry, information as to what services he is expected to perform; and when I say to him that "his general duties will be to build my fires and sweep my room," I do not intend thereby to merely guess, or give an opinion. I intend to inform him that if he enters my service it is expected of him as a duty or service to build my fires and sweep my room. After he does enter my service, if some one inquires of him "what his general duties are," and he answers, "they are to build my fires and sweep my room," I do not think such servant in making such an answer merely guesses, or gives his opinion. I think he testifies to matters within his own personal knowledge. It is always competent for a witness to state what services are performed by him in any business or employment; and when we ask a witness to state his general duties in any service or employment, the inquiry involves the general services performed by him in such employment. Therefore I think that when Steele was called upon to testify as to the general duties of the plaintiff, of which he had actual knowledge, the inquiry was the same as, what services were performed by him as fireman. This and nothing more.

My conclusion is, that where the general duties or general services of a servant or employé are not prescribed by written orders or rules, that any witness, having actual knowledge of such general duties or services, may testify as to what they are, of his own personal knowledge.

I do not think there is anything in these views conflicting with the case of *Monroe v. Lattin*, 25 Kas. 351, or with *The City of Parsons v. Lindsay*, 26 Kas. 426. In the case of *Monroe v. Lattin*, supra, the question was asked, "Then you would not think it negligent, would you, to leave him (the horse) unhitched just long enough for you to get into the buggy, if the lines are upon the same side of the horse you are going to get in?" The answer was, "I would not consider it negligent." All of this was excluded. Of course this question called solely for an opinion, and the matter did not involve skill or science. In that case the witness did not claim to be an expert, nor can it be in any manner urged that the evidence was upon matters within his own personal knowledge. In *The City of Parsons v. Lindsay*, supra, the court permitted one of the parties, over the objection of the other, to introduce in evidence the opinions of several witnesses that the street-crossing was unsafe and dangerous. No attempt was made to show that the witnesses were experts. I therefore think in that case that the question at issue before the jury, whether the street-crossing was safe or not, should have been left to the jury to be determined, under a statement of all the facts and circumstances within the knowledge of the witnesses as to the condition of the crossing. If Steele had been asked to give his opinion whether the plaintiff was negligent at the time he received his injury, the inquiry would have been of the character declared incompetent in *Monroe v. Lattin*, supra. If Steele had been asked to give his opinion whether the plaintiff was acting in an unsafe and dangerous manner at the time he received his injury, such inquiry would also have been incompetent within *The City of Parsons v. Lindsay*, supra.

In the dissenting opinion, the following question put to the plaintiff is referred to and commented upon: "Did you consider it the proper discharge of your duty at the time for each of you to be looking west, and that train going east as fast as a man could walk?" I think that this question was properly excluded, because it seems to me it was asked solely to confuse and mislead the jury. I do not understand that there is any

evidence in the record tending to show that at the time of the injury complained of the fireman and engineer were both looking west. The assumption of fact in the question was wholly unsustained by any evidence before the jury, and therefore the question itself was improper.