THE STATE OF KANSAS v. J. H. CRAWFORD.

RAPE— *Opinion as Evidence—Error.* Where a defendant is charged with having criminal knowledge of a female under the age of eighteen years, under § 1, chapter 150, Laws of 1887; and the female, with whom the criminal knowledge is charged, wholly denies the alleged offense, and says the defendant always acted toward her like a gentleman; and it is not shown that the female has become pregnant, and no result of any medical or other examination of her person is offered on the trial, it is material error, sufficient to reverse the judgment for conviction, to permit a witness who occupied a room immediately adjoining and below the one where the defendant and the female are alleged to have had criminal intercourse, to testify

17 — 39 KAS.

from the key being turned and the sound of the bed springs in their room, that in her opinion the parties were having carnal knowledge of each other.

*Appeal from Lyon District Court.*

THE following indictment (omitting caption and indorsements) was filed in the district court of Lyon county, September 13, 1887:

"At the September term of said court, 1887, the jurors of the grand jury of said county, duly impaneled and sworn and charged to inquire and true presentment make of all public offenses against the laws of the state of Kansas, cognizable by said court, committed or triable within said county, on their oaths do find and present, that on the 21st day of August, 1887, in the county of Lyon and state of Kansas, J. H. Crawford, then and there being, did then and there unlawfully, feloniously, carnally know, seduce and have sexual intercourse with Cora Ballard, the said Cora Ballard being then and there a female person under the age of eighteen years and of the age of sixteen years and no more; the said J. H. Crawford being then and there a male person over the age of twenty-one years; contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the state of Kansas."

Trial had October 13, 1887. The jury returned a verdict against the defendant of guilty as charged in the indictment. Subsequently the defendant filed his motion for a new trial, which was overruled. On October 24, 1887, the defendant was sentenced to the penitentiary of the state at hard labor for the term of five years. He was also adjudged to pay all the costs, taxed at $81.90. He appeals.

*F. A. Brogan*, for appellant.

*J. W. Feighan*, county attorney, and *J. Jay Buck*, for The State.

The opinion of the court was delivered by

HORTON, C. J.: This appeal is from a judgment of conviction for rape. Prior to the session of the legislature of 1887, the statute declared that—

"Every person who shall be convicted of rape, either by carnally and unlawfully knowing any female child under the age of ten years, or by forcibly ravishing any woman of the age of ten years or upwards, shall be punished by confinement and hard labor not less than five years nor more than twenty-one years." (Comp. Laws of 1885, ch. 31, § 31.)

In 1887 the age of consent was raised from ten to eighteen years, and the statute now reads:

"Every person who shall be convicted of rape, either by carnally and unlawfully knowing any female under the age of eighteen years, or by forcibly ravishing any woman of the age of eighteen years or upwards, shall be punished by confinement and hard labor not less than five years nor more than twenty-one years." (Laws of 1887, ch. 150, §1.)

In rape upon "any female under the age of eighteen years," none of the essential elements of rape, as it is constituted when committed upon a woman over that age, are required either to be alleged or proven. Carnal knowledge of a female under the age of eighteen years is in itself rape; that is, force, threats, or fraud, and want of consent, need not be averred or established.

The evidence in this case disclosed that Thomas Ballard, in the spring and summer of 1887, rented two rooms in the second story of a dwelling house, No. 218, on Merchant street, in Emporia, in this state; Mr. and Mrs. Taylor occupied the lower rooms of the dwelling; Thomas Ballard had been married twice; his first wife, the mother of Cora Ballard, was dead, and his second wife, the step-mother of Cora, did not live with him; in one of the rooms occupied by Ballard and his daughter were two beds, one a cot, and the other with a mattress and springs; this room was also used as a sitting-room; the other room was the kitchen. It is claimed that about August 27, 1887, the defendant J. H. Crawford had carnal knowledge of Cora, in her bed-room at 218 Merchant street; Crawford, at the time, was living in Emporia with a woman of easy virtue, but was not married to her. Cora's father tried to keep her from going with Crawford, and sent him word "never to let him catch him in the house;" the father

was at his work most of the time during the day, but Crawford, without his consent, came very often to the house to see Cora; they were together frequently in the room alone upstairs; they also took long walks together through the groves and by-ways around Emporia. Cora testified that she was engaged to be married to Crawford; denied that he had ever had any criminal intercourse with her, and stated "that he always acted toward her like a gentleman." She knew, however, of the improper relations existing between him and the woman with whom he was living, but to whom he was not married. It was not shown that Cora had become pregnant, nor was the result of any medical or other examination of her person offered upon the trial. The strongest evidence produced to establish the carnal knowledge of Crawford with Cora was that of Mrs. Taylor. She testified:

" *Ques.*: Do you know of Crawford and Cora being together up-stairs? *Ans.*: Yes, sir.

"Q. Did that occur frequently, or seldom? A. Quite often.

"Q. Now, Mrs. Taylor, you may state whether at any time you know of the door being locked, up-stairs. A. Yes, sir.

"Q. Do you know of the kind of mattress and arrangements they had up-stairs on the bed, whether they are springs, or slats, or bed-cord, or what it was? A. One with springs, and one without.

"Q. State what you heard, what kind of noise: was it the noise of a chair, or bed, or what? A. I heard the noise of springs.

"Q. Springs of a bed? A. Yes, sir.

"Q. Did that continue, or was it a mere temporary noise? A. I never heard that but one time, and for about ten minutes.

"Q. That continued for ten minutes? A. Yes, sir. It was such a noise as springs make.

"Q. Was it as though the parties were on the bed together? A. Yes, somebody was on the bed; whether it was one or more, I cannot say; somebody was on the bed.

"Q. Was that noise continuous? A. For ten minutes, or nearly that.

"Q. You may tell the jury whether those parties were having connection on the bed at the time you heard them. A.

You know I said I didn't see it, but what I heard was proof enough for me that that was what had taken place."

Objections were made to the last question and answer; but these objections were overruled, to which exceptions were noted. The evidence of Mrs. Taylor further showed that at the time she heard the key turn in the door and the sound of the bed springs, she was lying on a bed in her own room down-stairs, under the room whence the alleged noises proceeded; this room was lathed and plastered, and the room overhead carpeted. Upon cross-examination, Mrs. Taylor testified, in referring to the sound of the bed springs: "It couldn't have been made by anything but springs; it might have been made by some one sitting on the springs—it was the springs undoubtedly."

On account of the very weak and unsatisfactory evidence upon which the conviction was based in this case, we think the admission of the evidence of Mrs. Taylor that the parties were having connection on the bed at the time she heard the sound of the springs, was material error. Taking all the evidence together, it is extremely doubtful, in view of the denial of Cora Ballard, whether an offense, within the statute, was proven beyond a reasonable doubt. The evidence of Mrs. Taylor, excepted to, was merely her opinion—nothing more. She was not called as an expert, and it is a familiar rule that witnesses must speak the facts, and are not allowed to give opinions, unless they are experts, and then only upon questions of science and skill. In this case, the jury were to judge for themselves, from the facts testified to. (*Monroe v. Lattin,* 25 Kas. 351; *City of Parsons v. Lindsay,* 26 id. 426.)

The judgment of the district court will be reversed, and the cause remanded for a new trial.

All the Justices concurring.

*Rape; evidence, error in admitting.*