# The Northwestern Railroad Company

*v.*

# Frederick Hack.

1. Master and servant—*liability of master for act of servant done while in the discharge of his duty.* In this case, a boy aged between ten and eleven years got upon the steps of one of the cars of a railroad while the train was in motion, and was holding to the railing, when a servant of the railway company, employed to clean the cars and secure them, and

whose duty it was to keep persons out of the same, while in the discharge of that duty, kicked the boy's hand and thereby loosened his hold and caused him to fall between the cars, which resulted in his being run over and killed.  In a suit against the company by the administrator of the deceased to recover damages for the wrongful act, it was urged that the act of the servant was outside of his duty, and therefore the company was not liable: *Held*, that while the act itself was not in the line of duty of any employee of the company, yet, if it was done whilst in the discharge of his duty to require persons to leave the cars and to prevent their remaining thereon, the company was liable.

2.  Evidence—*impeaching witness—foundation to contradict witness.* Where it was sought to impeach a witness by showing that, previously, in giving an account of the transaction, he said nothing about a certain matter testified to by him, and the only foundation laid for the contradiction was to ask the witness whether he had given the same version of the occurrence on both occasions, and his answer that he had: *Held*, that the proper foundation was not laid; that the witness should have been specifically asked whether he omitted the statement which was offered to be proved, before contradictory evidence could be received.

3.  Same—*recalling witness for further cross-examination a matter of discretion.* Where the court refused to permit a witness to be recalled for further cross-examination for the purpose of laying a foundation to impeach him by contradictory evidence as to prior statements: *Held*, that such refusal could not be assigned for error, as it was discretionary with the court below to allow or refuse the recalling of the witness for such purpose.

Appeal from the Superior Court of Cook county.

Mr. Justice Walker delivered the opinion of the Court:

This was an action on the case, brought by appellee in the Superior Court of Cook county against appellant, to recover damages for having caused the death of his son whilst operating their engines and cars.

It appears that, in October, 1872, a train of cars had arrived at appellant's depot, and after the passengers had left the cars the proper persons commenced switching them to the side track, and another servant of appellant, employed in cleaning the cars, passed through from car to car, closing the windows, turning over the seats, locking the doors and driving away a number of boys who were getting on the cars.  It

also appears that appellee's son, his intestate, a boy between ten and eleven years of age, got upon the steps of a car whilst the train was in motion and was holding to the railing of the car, and the man engaged in closing the windows and locking the doors, passed, and appellee contends he kicked the boy's hand and loosened his hold of the guard, when he fell between the cars and was run over by the train and killed. The difference between the parties is confined to the manner in which the boy fell from the cars, appellee contending he was kicked loose, whilst appellant contends that the boy fell without fault of the servants of the company.

On the trial in the court below, Mohyde testified that he saw Delph kick the hand of deceased loose from the railing, whilst Anderson, who swears he saw the deceased fall from the car, says he did not see Delph kick the boy, and Delph denies having kicked the hand of the boy. The jury gave credit to the statement of Mohyde rather than to the others. It seems that Mohyde was at the place, and within a few feet of the occurrence, and Anderson was at the side of the street, something more than two hundred feet distant. The opportunity of Mohyde was much better to see and know what did occur than that of Anderson. Again, he locates the occurrence at a place some distance from where Mohyde says it occurred, and from the place where the body was picked up after the car had passed. Other testimony seems to corroborate the evidence of Mohyde, and we find none that corroborates the evidence of Anderson, except that of Delph, who is charged with kicking the boy's hand loose.

It is true, that Delph denies that he kicked the hand of the boy ; but he also denies kicking at other boys on the steps of the platform, and is contradicted by them. When we consider the relation he bears to the case, and when we see that he is flatly contradicted by two boys as to kicking at them, and by Mohyde as to his kicking the hand of deceased, and when he endeavors to make the impression that he was

in the car and near the middle when deceased fell, but is contradicted by Harty, who says he saw Delph come out of the car on the platform, on the steps of which deceased was standing, and that he jumped off and at once saw deceased under the car. At the speed the train was running, it is wholly improbable that Delph could have reached the middle of the car before deceased fell. The jury did not give credit to Delph's testimony, and we think they were warranted in giving the weight to that of the boys, and the evidence fully warrants the finding.

It is urged that, even if Delph did kick the hand of deceased, it was outside of his duty, and that appellant should not be held liable for the act. It is true, that the act, of itself, was not in the line of duty of any employee of the company, but the question is, whether the act was done whilst in the discharge of his duty; not in the precise manner in which it was done, but was it his duty to require persons to leave the cars and to prevent their remaining thereon? Myer, who had charge of that department, swears that he employed Delph and other car cleaners, and that it was their duty on Sundays, after cars arrived, to close them and see that no one was in them, also to clean, sweep out, and turn the seats of those that might be going out the same night. He testifies that the regulations are, that, after the arrival of the trains, and the passengers get out, for the car cleaners to take charge of the cars, lock up, clean out, and keep people out of the cars. And Leary and Ross testified that they had charge of the train to put the cars in their place, but had nothing to do with those in the cars for the purpose of closing and cleaning them out. From this evidence, it is manifest that the switchmen were only in charge of the train to place the cars where they belonged, in the yard, and Delph was in charge of the cars for the purpose of discharging his duty therein under his employment. The regulations required him to keep persons out of the cars, and he, in the discharge of that duty, seems to have driven other boys from the steps of the platform by

16—66TH ILL

kicking at them, and the act of kicking the deceased was no doubt to prevent him from getting in or upon the car, and was in the course of his duty. And in performing his duty, he exceeded all reason and acted with a recklessness that was monstrous ; and, on his examination, he seemed to have no conception of the enormity of such an act; he even seemed to be ignorant that such an act intentionally performed would have rendered him liable. He simply says that it might be that he could have been punished if he had kicked the boy off, and then, in further answer to the question, says that he could not get a chance at the boys, as they were too quick. With such a man in charge of the cars, the lives of children could not be otherwise than in peril.

With a child of the age of deceased, who would follow his childish instincts without comprehending the danger he was incurring in getting on the train, and only realized his peril when the train had attained such speed that he, as he said, could not loosen his hold, it was monstrous to have the person, entrusted with the custody of the car, kick his hand and break his hold, when, to the most obtuse intellect, almost certain death must have resulted. Such conduct shows recklessness of life that is wholly indefensible.

It is next urged, that the court below erred in refusing to permit the witnesses called by appellant, to prove that the witness Mohyde, in previously giving an account of the transaction to the attorney of the road, had said nothing about Delph's having kicked deceased's hand loose from the guard. The only foundation laid for the contradiction was, to ask the witness whether he had given the same version of the occurrence on both occasions, when he answered he had. He was not asked whether he had stated to the attorney, previous to the trial, that Delph had kicked the hand of deceased. But appellant contends that it was not required to be so specific in calling the witness' attention to the statement. The rule as to what constitutes a proper foundation for such an impeachment, is not entirely uniform. Some courts adopt a more

strict, and others a looser rule.  Starkie on Evidence, vol. 1, p. 145, states the rule thus : "But in order to prepare the way for such a contradiction, he must be asked the question in cross-examination, in order that he may have an opportunity of explaining that which is *prima facie* contradictory." Again, in part 4, vol. 3, p. 1753, the same author says : "It is also a general rule that, whenever the credit of a witness is to be impeached, by proof of anything he has said or declared or done in relation to the cause, he is first to be asked, upon cross-examination, whether he has said or declared or done that which is intended to be proved.  If the witness admits the words, declaration or act, proof on the other side becomes unnecessary, and an opportunity is afforded to the witness of giving such reasons, explanations or exculpation of his conduct, if any there be, as the circumstances may furnish ; and thus the whole matter is brought before the court at once, which is the most convenient course.  If the witness deny the words, declaration or act imputed to him, then, if it be not matter collateral to the cause, witnesses may be called to contradict him."

Greenleaf, in his work on evidence, lays down the rule that, before the witness can be contradicted, "it is generally held necessary, in the case of verbal statements, first, to ask him as to the time, place, and person involved in the supposed contradiction.  It is not enough to ask him the general question whether he has said so and so, nor whether he has always told the same story, because it may frequently happen that, upon the general question, he may not remember whether he has so said ; whereas, when his attention is challenged to particular circumstances and occasions, he may recollect and explain what he has formerly said." (Vol. 1, sec. 462.)  And he refers to numerous British cases in support of the rule, and amongst others the Queen's case, 2 Brod. & Bing. 313, in which the rule is stated as given by Starkie.  He also says in the note that, in the United States, the same course is understood to be generally adopted as laid down in the Queen's

case.   It is hardly to be inferred that Greenleaf intended to state the rule differently from Starkie, although not so full and particular.   It seems to be clear that the current of the authorities is decidedly in favor of the rule as given by Starkie, and we regard it as the most reasonable, and fairest to the witness, and best calculated to promote justice.   It gives the witness a reasonable opportunity of explaining, and if his evidence, as given, is true, the party calling him has a deep interest in having its full benefit.   We are clearly of the opinion that the witness should have been specifically asked whether he omitted the statement which appellant offered to prove before appellant could introduce contradictory evidence.   See *Cook* v. *Hunt*, 24 Ill. 535 ; *Root* v. *Wood*, 34 Ill. 283 ; *Winslow* v. *Newlan*, 45 Ill. 145.   The proper foundation was not laid, and the evidence was properly rejected.

It is again objected, that the court refused to permit the witness Mohyde to be recalled after appellee had closed his evidence, to be asked whether or not he had failed to state to the attorney that Delph had kicked the hand of deceased loose from the guard.

In the case of *Russell* v. *Martin*, 2 Scam. 493, it was held to be a matter of discretion to permit a witness to be recalled after his examination had been closed, and that the decision could not be assigned for error. *Wilborn* v. *Odell*, 29 Ill. 459. And the same rule has been announced in subsequent cases. It is true that, in the cases previously before the court, this precise question was not presented, but those cases involved the same principle. When the party has cross-examined a witness, and he has gone from the stand, the party may again, as a matter of right, call the witness as his own, but it is a matter of discretion whether the court will permit him to be called for further cross-examination ; and a refusal to permit a witness to be so recalled can not be assigned for error. See *Brown* v. *Berry*, 47 Ill. 175.   We do not regard the exercise of the discretion of the court below as oppressive, and can not hold that this court can review its action.

A careful consideration of the evidence in the case satisfies the majority of the court that it sustains the verdict, and the judgment of the court below must be affirmed.

*Judgment affirmed.*