36 655
38 621
38 625
39 540
36 655
56 330
36 655
65 352
65 357
36 655
68 731

The Kansas City, Fort Scott & Gulf Railroad Company v. William Kelly, *by his next friend, Giles Milhoan.*

1. Railroad Company, *Liable for Personal Injury.* Where a boy fifteen years old gets upon a freight train wrongfully, and as a trespasser, for the purpose of riding without paying his fare, and is commanded by the brakeman to jump off the train while in dangerous motion, in the night-time, and in obedience to that command, and in fear of being thrown off, jumps off the train and is run over and injured, the company is liable.

2. Brakeman, *Authority and Duty of.* It is within the scope of the general authority of a brakeman on a freight train to prevent trespassers from getting on the train, and to remove such persons who wrongfully get thereon; but if in so doing he does not exercise care and caution, but acts wantonly or maliciously, and an injury results, the railroad company is liable.

*Error from Johnson District Court.*

ACTION brought by *Kelly* against *The Kansas City, Fort Scott & Gulf Railroad Company*, to recover damages for personal injuries. Trial by jury; verdict for plaintiff for $4,000; new trial refused. June 16, 1885, judgment upon the verdict for plaintiff. The defendant brings the case here. The facts are sufficiently stated in the opinion.

*Wallace Pratt*, and *Chas. W. Blair*, for plaintiff in error.

*A. Smith Devenney*, for defendant in error.

Opinion by CLOGSTON, C.: It appears from the evidence that on the night of the 16th of June, 1884, while the north-bound freight train on the defendant's railroad stopped for water about one mile south of the city of Olathe, William Kelly got on the freight train between two freight cars, for the purpose of going to Kansas City; that he had no ticket, and no money to pay his fare; that he had been working in Galena, Cherokee county, Kansas, and had been sick, and was on his way home to Kansas City on the railroad without paying his fare. When the train started, and before it reached the station at Olathe, a brakeman passing over the train discovered the boy on the drawhead between the cars, and asked him where he was going, and whether he had any money to pay his fare; and the boy answered that he was going to Kansas City, and was without any money and could not pay his fare. The brakeman then directed him to get off the train. He said he would if they would slow up or stop the train. The brakeman then told him that the train was going slow enough for him to get off, and that he must jump off the train. The boy then climbed upon the ladder on the side of the car. The brakeman stepped from the car he was on to the end of the car where the boy was and told him to get off or he would throw him off. In obedience to this demand he jumped off the train, and in falling his right leg was caught under the wheels of the car and his foot and ankle were crushed. He

was picked up by a man and carried to a hotel, where it was found necessary to amputate his leg between the knee and ankle. This was done.

The evidence does not disclose what the duties of a brakeman are on the defendant's road. In the absence of a rule defining his duties, we presume that, under the general scope of his employment as a servant of the company on the train, concerned in its management, and aware of the fact that a person who goes upon the train with the intent to ride thereon without paying fare is a trespasser, the implied authority in such case is an inference from the nature of the business and its actual daily exercise according to common observation and experience. Added to this, is the testimony of the brakeman, who answered, when asked how it happened that he stood by and let Long, another brakeman, do all the talking with this young man, "I was to keep them off of my end of the train, and he was to keep them off of his." Assuming that the brakeman had authority to put trespassers off the train in a lawful manner, yet defendant insists that if the act was done, as the plaintiff claims, and the boy was forced off the train while it was running at a speed of eight miles per hour on a dark night, it cannot be said that the brakeman was acting in so doing under the scope of his employment so as to make the company liable. In this the defendant is mistaken. Assuming the case made by the plaintiff, the act complained of was reckless, wanton, and illegal, and if done

Railroad company; liability for personal injury of trespasser; authority and duty of servants.

within the scope of the brakeman's employment and authority, he was acting for the defendant, and not for himself. The removal of trespassers from the train was within the implied authority and became the duty of the servants in charge of the train; and the fact that in so exercising that right or duty they acted negligently and wantonly, and caused the boy to jump off the train while running at a speed unsafe for him to get off, and he was injured, will not exonerate the defendant. (*Ramsden v. Boston & Albany Rld. Co.*, 104 Mass. 117; *Higgins v.*

42 — 36 KAS.

*Turnpike Co.*, 46 N. Y. 23; *N. W. Rld. Co. v. Hack*, 66 Ill.
238; *Kline v. C. P. Rld. Co.*, 37 Cal. 400.)

The defendant had the right to put the boy off from its cars,
and in doing so could use such force as was necessary to eject
him, but in so doing must exercise the right with ordinary
care and prudence on its part. And if the train was moving
at such a rate of speed as to render it unsafe, and the night
was dark, it must stop or slow up the train; and the mere
fact that the boy was on the train as a trespasser was not such
negligence as to relieve the defendant from this obligation, and
gave its servants no license to negligently and wantonly eject
him in a manner liable to do him great bodily harm. (*Morgan
v. Comm'rs of Miami Co.*, 27 Kas. 89.) And it could make no dif-
ference whether he was ejected by actual force or by threats, if
he jumped from the train in obedience to a command of the
brakeman. He being a boy fifteen years old, he would not be
expected to use that degree of judgment and discretion which
would be expected and required of an adult. He believed,
and he had a right to believe, that force would be used to eject
him; and when he saw the brakeman coming toward him,
threatening to throw him off, he cannot under the circum-
stances be charged with negligence for not having waited
longer. (*Kline v. C. P. Rld. Co.*, 37 Cal. 404; *Moulton v. Aldrich*,
28 Kas. 312.)

Again, he was assured that it was safe to get off the train,
and that it was not necessary to slow up. Relying upon
either, the defendant cannot be heard to say that his injury
was caused by his own negligence. What he was guilty of
was in getting on the train without being prepared to comply
with the regulations of the company in relation to the carry-
ing of passengers, and trying to ride on the train without pay-
ing fare; but at the time of the injury defendant well knew
of this negligence, and was informed of the facts which showed
him to be a trespasser on the train without right, save such
right as the defendant owed even to trespassers. And we
believe the true rule and doctrine to be that a railroad com-
pany is bound to exercise its dangerous business with due care

to avoid injury to others, even to the protection of a trespasser who is not guilty of contributory negligence. (*Beems, Adm'r, v. C. R. I. & P. Rld. Co.*, 58 Iowa, 155; *Keffe v. M. & St. P. Rly. Co.*, 21 Minn. 207; *K. C. Rly. Co. v. Fitzsimmons*, 22 Kas. 686.)

The defendant complains of the instructions given by the court to the jury. Some of these objections we deem of not sufficient importance to receive comment; others are covered by the general discussion of the questions in this opinion. The defendant particularly complains of a part of the sixth instruction, which is as follows:

"And I charge you that the plaintiff's right to recover is not affected by his having contributed to the injury, unless he was at fault in so doing."

The general rule is, that one cannot recover for an injury if he is guilty of negligence directly contributing to the injury; yet under the facts in this case, if the plaintiff was guilty of negligence, it was in boarding the defendant's train without first procuring a ticket, or having money to pay his fare: in other words, in attempting to cheat the company and be transported for nothing. Technically speaking, the jumping off the train by the plaintiff was negligence; and this instruction, in speaking of the plaintiff's negligence, was considering this kind of negligence: in fact, the only claim of negligence relates to these two acts of the plaintiff. We admit that these acts, taken and considered by themselves alone, and unexplained by circumstances and motives, establish negligence where those acts result in the injury. In the first instance the negligent act of the plaintiff was discovered by the defendant before the injury; and after this discovery, by the slightest care on the part of the defendant, the injury could have been prevented. Then can it be said or claimed that by reason of this negligent act the plaintiff was injured? As to the latter, it was caused by the acts of defendant's servants while in the discharge of their master's business. If the plaintiff, when discovered, had voluntarily jumped from the train while the train was in dangerous motion, or had done so

without sufficient provocation or ground for alarm, or in anticipation of danger where none existed, or had failed to exercise reasonable care and caution, situated as he then was, and the like, these things would not justify or excuse him. So the mere negligent act alone, when shown, will not always determine the right of recovery. The act may exist, and yet be the result of no fault of him who commits it. We see no error in this instruction. (*Nelson v. A. & P. Rld. Co.*, 68 Mo. 593; *City of Wyandotte v. White*, 13 Kas. 192.)

Again, the defendant presents a single sentence from the ninth instruction, and claims it to be error: "Plaintiff was only required to exercise ordinary care to avoid injury." The ninth instruction, taken altogether, we think was properly given. It is as follows:

"9. Plaintiff was only required to exercise ordinary care to avoid injury, but this requisite could only be complied with by the exercise of that degree of caution which persons of his age and intelligence and of ordinary prudence would use under the same conditions of danger, and with like knowledge of the situation."

This instruction, viewed in the light of the facts, properly states the law applicable to the facts. The plaintiff was on a train, and a trespasser. He was entitled to no protection from an injury resulting from his own acts or conduct, and could claim no protection from injuries received while so trespassing on the defendant's train, resulting from the ordinary and usual operation and management of the defendant's train; but to meet and protect himself against the wrongful acts of the defendant, he was not required to exercise more than ordinary care, considering his age, his situation and condition, and surrounding dangers. When he became a trespasser upon the train, he had no right to believe that by reason of that fact he was to be negligently or wantonly expelled, or ejected in a manner that would result in serious injury to himself. (*Townley v. C. M. & St. P. Rly. Co.*, 53 Wis. 626.)

In conclusion, defendant insists that the special findings of the jury show passion toward the defendant. We have care-

fully examined the special findings, and find no evidence of this charge, but on the contrary, find all of the special findings supported by some evidence. True, upon some questions the evidence is conflicting; but the jury's belief of one set of witnesses and disbelief of others, is not of itself evidence of passion or prejudice. (*K. P. Rly. Co. v. Kunkel,* 17 Kas. 145; *Whitaker v. Mitchell,* 58 Cal. 362.)

We find no error in the record, and therefore recommend that the judgment of the court below be affirmed.

By the Court: It is so ordered.

All the Justices concurring.