J. A. PIERCE, administrator of Frank H. Pierce, v. NORTH CARO-
LINA R. R. COMPANY.

(Decided March 7, 1899).

*Lessor and Lessee—Negligence and Contributory Negligence
—Conduct, Wanton and Malicious—Code Practice.*

1. A lessor railroad company is liable for the negligence of its lessee, in operating the road, unless expressly exempted from liability in such case by its charter, or by subsequent legislation.

2. A trespasser's wrongful act in getting on a car does not justify his being put off in a manner calculated to cripple or kill—neither will a town ordinance, which imposes a penalty upon such trespasser, warrant those in charge in subjecting him to such usage.

3. A railroad company is responsible for injury caused by the wrongful act of its employee, while acting in the scope of his employment, in the discharge of the duties assigned him—and that, whether such act is willful, wanton and malicious, or merely negligent.

4. "A broadside" exception, one which fails to specify alleged errors in a Judge's charge, can not be considered; it is against the established practice of the Court and the enactment of The Code, section 550.

5. It is not necessary to recur to the fine-spun distinctions of special pleading, happily swept away, in order to discern a wrong, or to apply the remedy—the common sense system, now in use, will suffice for both.

PIERCE *v.* RAILROAD CO.

Statement of case by Mr. Justice CLARK:

This was a case tried before *Allen, J.,* and a jury, at November Term, 1898, of ROWAN Superior Court, for the recovery of damages for the death of the plaintiff's intestate, a boy of from twelve to thirteen years of age, who was run over and killed by the defendant's engine and tender, while shifting cars in the town of Salisbury. There was no exception to evidence. At the close of plaintiff's evidence the defendant moved to dismiss the complaint and for judgment as of nonsuit. Motion overruled and defendant excepted. The examination of other witnesses was then proceeded with, and at the close of the evidence the defendant asked for the following instructions in writing:

1. There is no evidence of any negligence as alleged in the complaint and the jury should find the first issue, "No."

2. If the jury believe that the intestate of plaintiff was killed by the wanton, willful and malicious act of one of the employees of the railroad company, then the company would not be liable, and they should find the first issue in favor of the defendant, and answer the same, "No."

3. If the jury find that the intestate's death was caused by the wanton and malicious act of the fireman, and that his act was not done in the furtherance of the business of the defendant, they should find the first issue in favor of the defendant, and answer the same, "No."

4. It is incumbent upon plaintiff to show that the act of the defendant's servant was within the scope of his duties and authority, and there is no evidence that this was the fact.

5. The jury must find that the primary cause of the death of plaintiff's intestate was the act of the fireman in throwing coal or other missile at the intestate before they can answer the third issue, "Yes."

6. There is no evidence that the fireman of the defendant's

lessee struck the deceased and knocked him off the steps of the tender.

7. The deceased was violating an ordinance of the town, and violating the law when he was killed, in swinging on the tender of the engine.

The Court, after reading over the evidence to the jury, gave the following charge to the jury:

You have heard the evidence as taken down read over. That is done for the purpose of refreshing your minds as well as that of the Court, and for the purpose of aiding the Court in instructing you. You are to remember the evidence as it came to you from the witnesses on the stand if there is any difference in the evidence as read over to you and the way you remember it from the witnesses.

Upon this evidence these issues are submitted to you:

1. Was the plaintiff's intestate killed by the negligence of the defendant, as alleged?

2. Did the plaintiff's intestate, by his own negligence, contribute to his death?

3. Could the defendant, by the exercise of reasonable care and prudence, have avoided the injury, notwithstanding the contributory negligence of the deceased?

4. What damage is plaintiff entitled to recover?

The burden is upon the plaintiff to show by a preponderance of evidence facts sufficient to enable him to recover. Upon the first, third and fourth issues it is upon plaintiff. Upon the second issue, that of contributory negligence, the burden is upon the defendant.

In this place the plaintiff contends, first, that the deceased was not negligent and that he was killed by reason of the negligence of the defendant, and that even if the deceased was negligent—if you find that he was negligent—that still defendant could have stopped the engine and put the boy off;

and, second, that his death was due to the throwing of coal or missiles at him, which caused him to jump from the train or to fall from the train and he was thereby killed. Now, the defendant denies this, and says that the engineer and fireman did not know that the deceased was on the tender, if he was on the tender, at the time he was killed, and that they were exercising reasonable care and prudence at the time of the killing. That the fireman did not knock him (they deny that) or frighten him off, or throw coal at him, or any other missile, and that the engine was so constructed that the fireman could not have thrown coal and struck him or frightened him from the train, owing to what was, the defendant contends, the peculiar construction of the tender, the defendant contending that it was so constructed that he could not have thrown it according to the way in which plaintiff says coal was thrown at him.

The plaintiff contends that it was constructed differently from the way the defendant contends, and was so constructed that he could have seen the boy, and could at least have thrown over at him and struck him or frightened him.

The defendant further contends that the deceased's negligence and his conduct were the sole cause of his death and that the defendant is in no wise liable. A master, and for the purpose of this case when I speak of master I mean the principal and the railroad or the corporation would be a master in a case of this kind. A master is liable for the conduct of its agents or servants when acting in the course or scope of his employment or line of duty, and his wrongful acts are not in consequence of something outside of his duty. The defendant lessee would be liable for the violent or unlawful conduct of its employees on the shifting engine when they were acting in the scope or line of their duty, and it is incumbent on the plaintiff to show this, and whether or not the

lessees' servants on the shifting engine were guilty of violent conduct causing the death of plaintiff's intestate, and also whether such violent conduct, if you find there was such violent conduct, was committed by the engineer or fireman, or either of them, while serving the lessee, and while acting in the scope or course of their employment, are facts for the jury, to be determined upon consideration of all the evidence.

In considering the first issue, as the issues are shaped in this case, you will not consider as to whether the negligence of the defendant was the proximate cause, but did the employees of the defendant kill the deceased, and were they guilty of negligence in doing so, is the inquiry. If you find that the defendant's lessee put an engineer and fireman in control of its shifting engine, and they were in control of it, and while they were in the discharge of their duty and acting in the scope and course of their employment, the fireman threw coal or other missiles at plaintiff's intestate, and you further find that the plaintiff's intestate was a boy between twelve and thirteen years of age, or about thirteen years of age, and that he was a trespasser, riding upon the tender, without consent and without paying fare, and you find that by reason of the violence so employed by the fireman the said boy fell· from the tender, or was knocked off, or was caused to jump off the tender from fright while the engine was in motion, and was thereby run over and killed, you will answer the first issue, "Yes," ·provided the boy acted with reasonable care and prudence of a child of his age, if you find he jumped or fell from such fright.

If the jury find that the fireman, in the course of his employment, as aforesaid, used force for the eviction of the deceased from the tender in the manner just mentioned, and further, that the engineer, by keeping a prudent lookout and using usual appliances, could have caused the removal of the

deceased without injury by slowing up or by stopping the engine, it would be negligence, and you would answer the first issue, "Yes."

In dealing with a trespasser a party is not held to the highest degree of care, such as is due to a passenger, but he is required to exercise ordinary care, and if the servant or employee does not exercise ordinary care towards a trespasser while in the line of his employment, and injury result therefrom the master is liable, unless the act of the servant is something outside of his employment and for his own purpose.

If the deceased got upon the tender of the defendant while its engineer and fireman, in the course of their employment, were switching cars, without their knowledge or consent, and they could not, by the exercise of ordinary care and watchfulness, have seen him or known it, and whilst so upon it, or in atempting to get off of it, either from fright or any other cause, not attributable to the negligence of the fireman or engineer, he jumped, or fell and was run over and killed, it would not be negligence, and you should answer the first issue, "No."

If the deceased was not upon the tender, but was along the track, and the engineer or fireman could not, by the exercise of ordinary care and watchfulness, have seen him, the first issue should be answered, "No."

After you have settled the first issue, if you answer it "No," you proceed no further; but if you answer the first issue "Yes," then you proceed to the second issue.

If the jury find that the deceased got upon the tender without the consent of the engineer or fireman, while it was running over the defendant's track, then he was not only violating a town ordinance, but would be a trespasser independently of that, and if the injury would not have occurred

but for his having gotten on, then he contributed to his injury and death, either remotely or proximately, and your answer to the second issue should be, "Yes."

If he was not on the tender at the time of the injury, but was negligently on the track and killed, the answer to the second issue should be, "Yes." The second issue is—did the plaintiff's intestate, by his own negligence, contribute to his death.

Contributory negligence can only exist when the negligence of both parties have combined and concurred in producing the injury. A failure on the part of the deceased to exercise ordinary care to avoid the injury would constitute contributory negligence. Children who have not reached the age where they are wholly responsible are not required to use the same degree of care and prudence that a grown person similarly situated are, but a child can be guilty of contributory negligence, and the jury are the ones to say whether he is or not.

If you find the second issue no, that he did not contribute to his injury and death, and you have answered the first issue yes, then you need not consider the third issue; but if you answer the first issue yes, and the second issue yes, then you proceed to the third issue—could the defendant, by the exercise of reasonable care and prudence, have avoided the injury, notwithstanding the contributory negligence of the intestate. When I speak of the intestate and deceased you will understand who I mean by that—the boy—and when I speak of the defendant you will understand that I mean the defendant company, the lessee of the defendant.

So now, I instruct you as to the third issue, if you reach the third issue; that is, if you answer the first issue yes, and the second issue yes, then you come to consider the third issue—could the defendant, by the exercise of reasonable

care and prudence, have avoided the injury, notwithstanding the contributory negligence of the intestate.

By reasonable care and prudence, if you find the deceased was a trespasser, is meant ordinary care and prudence.

If, notwithstanding the defendant's negligence, and the deceased's negligence, if found to be so, the defendant could, by the exercise of due care and prudence, have avoided the injury, the failure to do so would be the proximate cause of the injury and death, and the defendant would be liable for damages.

If you find the deceased was negligent by getting on the tender, then could the defendant's lessee, the engineer or fireman, or both, have avoided the injury and death by the exercise of reasonable care and prudence, either by stopping the engine and putting him off, if you find he was on, and they knew it, or if you find he was forced or frightened off by having omitted the acts that frightened him off, and was this the proximate cause of his death, and if so you will answer the third issue, "Yes."

Could the defendant's engineer or fireman, by the exercise of ordinary watchfulness have seen the deceased in time to have avoided the injury, and if so, was the failure to do so the proximate cause of the injury. Did the fireman throw coal or other missiles at the deceased and cause him, in the exercise of ordinary care and prudence, commensurate with his age, in consequence to jump off or fall from the tender, and was that the proximate cause of the death; if so, the third issue should be answered, "Yes." If the defendant's servants or employees in charge of the engine, the engineer and fireman, could not, by the exercise of ordinary care and prudence, have avoided the injury, and if the defendant's employees' negligence, if you find them negligent, was not the proximate cause of the injury, then the third issue should be answered, "No."

The jury must find that the primary or proximate cause of the death was an act of negligence on the part of the engineer or fireman before they can answer the third issue "Yes."

Now, if you answer the third issue no, then you need go no further, but if you answer the third issue yes, and have previously answered the first and second issues yes, or if you answer the first issue yes, and the second issue no, then you are to consider the fourth issue; that is, the issue as to damages—what damage is the plaintiff entitled to recover. In estimating the damages it must necessarily be left in a great degree to the sound sense and discretion of the jury in view of all the facts and circumstances, to determine whether the deceased would have earned something or nothing to the pecuniary advantage of his next of kin, or if anything, then how much, and of what value, is a question for the jury.

The rule by which this estimate is to be made is decided to be the reasonable expectation of pecuniary advantage from the continuance of the life of the deceased. As a basis on which to enable the jury to base their calculations or estimate, they may consider the age of the deceased, his prospects of life, his habits and character, his industry and skill, his means for making money, and his capacity for work or business, the end of it all being to ascertain the present value of the net income of the deceased which might be reasonably expected if death had not ensued.

If you reach this issue as to damages, you should seek to be fair and reasonable. You have no right to seek to punish the defendant by excessive damages, nor to give what you think would be an equivalent for life. You are not seeking to value a human life in the sense that we speak of when we say what would a man take for his life, nor should you seek to compensate the parent for his grief, nor allow anything

for the suffering either of the parent or of the deceased; that is not the question at all, and you should divest yourselves of all sympathy. It is a matter that appeals to our sympathies, but when you come to render your verdict you have to lay that aside, nor should you allow yourselves to be influenced by any prejudices, if you have any, but seek to render a fair and reasonable verdict, not only as to the issue on damages, but upon all the issues. You may retire and make up your verdict.

The defendant excepted to the Court's refusal to charge the jury, as prayed for in its prayer, and also to the charge as given.

The findings by the jury were as follows: In answer to the first issue, response, "Yes;" in answer to the second issue, "Yes;" in answer to the third issue, "Yes;" in answer to fourth issue, "Two thousand dollars."

Upon these findings, the defendant asked for judgment in its behalf, which was denied, and the Court gave judgment for the plaintiff, from which defendant appealed.

The defendant assigns the following as errors committed by the court, to-wit: The failure and refusal, on part of the Court, to give judgment of nonsuit upon motion of defendant, after plaintiff rested his case; the failure and refusal of the Court to give the instructions asked for by the defendant; the giving the charge to the jury, as set out in the Court's written instructions; the refusal and denial of judgment for the defendant, upon the findings of the jury, upon the issues submitted.

*Messrs. Chas. Price* and *G. F. Bason,* for defendant (appellant).

*Messrs. L. S. Overman, B. F. Long* and *R. L. Wright,* for appellee.

CLARK, J. The motion to dismiss the complaint and for judgment of nonsuit appears from brief of defendant's counsel to be intended to raise again the question whether the lessor company, the North Carolina Railroad Company, the defendant herein, is liable "for all acts done by the lessee in the operation of the road," as was held in *Logan v. Railroad,* 116 N. C., 940; but why the counsel should feel "encouraged to believe" that "this Court will retire from the position it has taken upon the question" we are not advised. We have perceived no lack of "soundness of reasoning" therein. The decision in Logan's case was made after full deliberation, and with full appreciation and careful discussion of the important principle now again called in question —and it was held that "a railroad company can not escape its responsibility for negligence by leasing its road to another company, unless its charter or a subsequent Act of the Legislature specially exempts it from liability in such case"— and it was made in an action to which the appellant herein was the party raising the question. The same proposition had been theretofore laid down by SMITH, C. J., in *Aycock v. Railroad,* 89 N. C., at p. 330, with cases there cited; and Logan's case upon this point has been expressly cited and sustained in *Tillett v. Railroad,* 118 N. C., at p. 1043; *James v. Railroad,* 121 N. C., at p. 528; *Benton v. Railroad,* 122 N. C., 1007; and *Norton v. Railroad,* same volume, at pp. 936, 937.

The issues excepted to are those suggested for cases of this nature in *Denmark v. Railroad,* 107 N. C., 185, and which have been time and again approved since. Every phase of the defendant's contention could have been presented upon the issues submitted, and there could be, therefore, no just ground of exception in that respect. *Willis v. Railroad,* 122 N. C., 905, and cases there cited.

The exception for refusal of the first prayer to instruct the jury that there was no evidence of negligence, and of the fourth prayer to instruct them that there was no evidence that the act of defendant's servant was within the scope of his duties, and of the sixth prayer, to instruct them that there was no evidence that the fireman of defendant's lessee struck the deceased and knocked him off the steps of the tender, are, upon the evidence, without merit. The other part of the fourth prayer, and the seventh prayer for instruction, were given in the charge. The charge of the Court given in lieu of the fifth prayer for instruction gives the defendant no ground to complain at the refusal of that prayer.

We will now consider the second and third prayers for instruction, which were:

2. If the jury believe that the intestate of plaintiff was killed by the wanton, willful and malicious act of one of the employees of the railroad company, then the company would not be liable, and the jury should respond to the first issue, "No."

3. If the jury find that the intestate's death was caused by the wanton and malicious act of the fireman, and that his act was not done in the furtherance of the business of the defendant, they should find the first issue in favor of the defendant, "No."

The assumption in these prayers that the defendant is not liable if the plaintiff's intestate was killed by the wanton, willful and malicious act of one of the employees of the defendant, and especially if such act was not done in furtherance of the business of the defendant, can not be sustained. The true test is, was it done by such employee in the scope of the discharge of duties assigned him by the defendant and while in the discharge of such duties. "In furtherance of the business of employer" means simply in the discharge of the duties of the employment, and the Court properly told the

jury that the defendant is responsible for the injury if caused by the wrongful act of the employee while acting in the scope of his employment. In *Ramsden v. Railroad,* 104 Mass. (at p. 120) GRAY, J., says: "If the act of the servant is within the general scope of his employment, the master is equally liable, whether the act is willful or merely negligent. *Howe v. Newmarsh,* 22 Allen, 49; or even if it is contrary to an express order of the master. *Railroad Co. v. Darby,* 14 Howard, 468." The rule is thus laid down in 2 Wood Railways, section 316 (at p. 1404, 2d. Ed.): "Where the act is within the scope of the servant's authority, express or implied, it is immaterial whether the injury resulted from the result of his negligence, or from his willfulness and wantonness; nor is it necessary that the master should have known that the act was to be done. It is enough if it is within the scope of the servant's authority. Thus, where a servant of a railway company, employed to clean and scour its cars, and keep persons out of them, kicked a boy eleven years old from a railing while the cars were in motion, whereby he was thrown under the cars and killed, it was held that the act, although in nobody's line of duty, being done in the course of the servant's employment, the company was chargeable therefor," citing *R. W. Railroad Co. v. Hack,* 66 Ill., 238, and other cases as authorities. Among many other cases almost on "all-fours" with the present, are *Kansas City R.R. Co. v. Kelly,* 36 Kan., 655, in which it was held that, "Where a boy fifteen years old gets upon a freight train wrongfully and as a trespasser, for the purpose of riding without paying his fare, and is commanded by the brakeman to jump off the train while in dangerous motion, in the night time, and in obedience to that command, and in fear of being thrown off, jumps off the train and is run over and injured, the company is liable;" and it is further held that, whether the brakeman "acted

wantonly and maliciously or merely failed to exercise due care and caution, the railroad company is liable" for damages resulting from the brakeman's conduct, citing many cases. In *Rounds v. Railroad,* 64 N. Y., 129, the defendant was held liable where the plaintiff jumped upon the platform of a baggage car to ride to a place where the cars were being backed to make up a train, this being against the regulations of the defendant, and the baggage-master knocked him off, and in falling, he fell upon some wood, rolled under the car and was injured, the Court holding that, "to make the master liable it is not necessary to show that it expressly authorized the particular act; it is sufficient to show that the servant was acting at the time in the general scope of his authority, and this, although he departed from his instructions, abused his authority, was reckless in the performance of his duty and inflicted unnecessary injury." In *Lovett v. Railroad,* 9 Allen (Mass.), 557, it was held that where a boy of ten years old wrongfully got upon a street car, and the driver ordered him to jump off, while running at a dangerous speed, the company is responsible for the injuries sustained by the boy in doing so unless it was found that the injury was caused by the boy's negligent manner of getting off. Another instance of liability for injuries sustained by a trespasser from the servant's violently and forcibly putting the trespasser off, is *Carter v. Railroad,* 8 Am. & Eng. R. R. Cases, 347, which cites numerous precedents of like purport. But it is needless to multiply cases. All of them hold such ejectment is done by the servant in the general scope of his employment, and if done recklessly or wantonly and maliciously, and even if in a manner forbidden by the master's orders, the company is liable for the tortious act. The ground is that the proximate cause of the injury is not the trespasser's wrongfully getting on the cars, but the tortious manner in which the

servant makes him get off, and that this act, being in the general scope of the servant's employment, the master is liable.

In the present case, whether the child jumped off because ordered by the brakeman or by reason of the hint of a lump of coal whizzing by his head, or was actually struck and knocked off, this mode of getting him off the moving car was tortious, and the defendant is liable for the injury caused thereby. 14 Am. & Eng. Enc., 822, 823, and cases cited in the notes thereto; Pierce on Railways, 278 279; 99 Am. Dec., 282, and notes; *Peck v. R. R.,* 70 N. Y., 587; *Railroad v. Harris,* 122 U. S., 597.

It is true the child was on the tender in violation of a town ordinance, as the defendant contends, but the penalty for this was a small fine and not a license to the defendant's servant to cripple him or kill him.

The defendant, however, earnestly contends that if the servant's act was malicious the company is not liable for negligence. If that theory ever obtained, the above authorities show that it was contrary to reason and has been duly and fully exploded. Besides, the company is not charged in this case with malice because of any alleged malice of its agent, and whether, if it was, it could be held liable for punitive damages is not before us. It is certainly liable for compensatory damage for the injury sustained from the tort of its servant.

The brief of the learned counsel for the defendant strenuously insists that a case of this kind can not be understood by the Court and justice properly administered unless we translate the action back into one of the old common law forms of actions, and that when that is done it would be seen that the plaintiff can not sustain his demand. This suggests the precedent of the physician, who, in a difficult case, proposed to give his patient something to throw him into fits, on the

124—7

ground that he was infallible in curing fits. It was precisely because the old division into forms of action lent itself to fine-spun metaphysical distinctions whereby the form of proceeding became more important than the subject matter and led to frequent miscarriages of justice, that the common sense of an enlightened age swept the old system away, and for more than fifty years the discarded legal jargon of a former age has sounded strange, if referred to at all, at Westminster Hall, in which it grew up. In our own State the Constitution abolished the old system, and by statute we have substituted the simple requirement that the complaint shall contain "a plain and concise statement of the cause of action." The Code, section 233 (2). That is the case here. We shall not delve in the debris of dead and forgotten centuries, nor disturb the dust that sleeps above the volumes of an outworn and long-rejected legal system. To do so would be to obscure the substantial justice which it should be the sole object of every legal inquiry to ascertain. We need not darken counsel by multitude of words, nor entangle ourselves in the scholastic disputations which once obtained in legal proceeding and very often defeated their object.

Here the plaintiff's intestate was admittedly run over and killed by the defendant's train. Upon the uncontroverted facts of this case, the brakeman, as a matter of law, was acting in the scope of his general employment, and the Court properly instructed the jury that if the boy was made to get of the car (though he was there wrongfully) by the act of the brakeman, whether malicious or not, while the train was moving, so that the boy was killed in consequence of so doing, the defendant was liable for the damage caused by the negligent conduct of its lessee in thus operating its train.

The defendant further excepted "to the charge as given." This is a "broadside" exception which can not be consid-

PIERCE *v.* RAILROAD CO.

ered.　This has been uniformly so held for a long series of years and in possibly more than fifty cases, and has been recently reaffirmed by FURCHES, J., in *Hampton v. Railroad,* 120 N. C., at p. 538, and *State v. Moore, Ibid,* at p. 571; by FAIRCLOTH, C. J., in *State v. Ashford,* 120 N. C., 588, and by DOUGLAS J., in *State v. Webster,* 121 N. C., 586, and in other recent cases, two of them at this term.　Indeed, the statute (The Code, section 550) is explicit, requiring the appellant to prepare "a concise statement of the case, embodying the instructions of the Judge as signed by him, if there be an exception thereto, and the requests of the counsel for parties for instructions, if there be exception on account of the granting or withholding thereof, and *stating separately in articles numbered* the errors alleged." It would be so eminently unjust to an appellee to have an entire charge excepted to, without any specifications of the errors alleged therein, that he might prepare himself for argument thereof on appeal, and the decisions that such broadside exception will be disregarded here have been so uniform that we would feel impelled to adhere to so just and uniform a ruling, even if the statute law had not explicitly prescribed it.　A careful consideration of the charge shows, besides, that there is no error therein of which the defendant could complain.

The last exception, which is for refusal of judgment in favor of defendant upon the findings of the jury, needs no consideration beyond what is involved in the preceding discussion.

Affirmed.