The motion to dismiss the complaint and for judgment of (93) nonsuit appears from brief of defendant's counsel to be intended to raise again the question whether the lessor company, the *Page 88 
North Carolina Railroad Company, the defendant herein, is liable "for all acts done by the lessee in the operation of the road," as was held in Loganv. R. R., 116 N.C. 940; but why the counsel should feel "encouraged to believe" that "this Court will retire from the position it has taken upon the question" we are not advised. We have perceived no lack of "soundness of reasoning" therein. The decision in Logan's case was made after full deliberation, and with full appreciation and careful discussion of the important principle now again called in question — and it was held that "a railroad company cannot escape its responsibility for negligence by leasing its road to another company, unless its charter or a subsequent act of the Legislature specially exempts it from liability in such case" — and it was made in an action to which the appellant herein was the party raising the question. The same proposition had been theretofore laid down by Smith, C. J., in Aycock v. R. R., 89 N.C. at p. 330, with cases there cited; and Logan's case upon this point has been expressly cited and sustained in Tillett v. R. R., 118 N.C. at p. 1043; James v. R. R., 121 N.C. at p. 528; Benton v. R. R., 122 N.C. 1007, and Norton v. R. R.,ib., 936, 937.
The issues excepted to are those suggested for cases of this nature inDenmark v. R. R., 107 N.C. 185, and which have been time and again approved since. Every phase of the defendant's contention could have been presented upon the issues submitted, and there could be, therefore, no just ground of exception in that respect. Willis v. R. R., 122 N.C. 905, and cases there cited.
(94) The exception for refusal of the first prayer to instruct the jury that there was no evidence of negligence, and of the fourth prayer to instruct them that there was no evidence that the act of defendant's servant was within the scope of his duties, and of the sixth prayer, to instruct them that there was no evidence that the fireman of defendant's lessee struck the deceased and knocked him off the steps of the tender, are, upon the evidence, without merit. The other part of the fourth prayer, and the seventh prayer for instruction, were given in the charge. The charge of the court given in lieu of the fifth prayer for instruction gives the defendant no ground to complain at the refusal of that prayer.
We will now consider the second and third prayers for instruction, which were:
2. If the jury believe that the intestate of plaintiff was killed by the wanton, willful and malicious act of one of the employees of the railroad company, then the company would not be liable, and the jury should respond to the first issue, "No." *Page 89 
3. If the jury find that the intestate's death was caused by the wanton and malicious act of the fireman, and that his act was not done in the furtherance of the business of the defendant, they should find the first issue in favor of the defendant, "No."
The assumption in these prayers that the defendant is not liable if the plaintiff's intestate was killed by the wanton, willful and malicious act of one of the employees of the defendant, and especially if such act was not done in furtherance of the business of the defendant, cannot be sustained. The true test is, was it done by such employee in the scope of the discharge of duties assigned him by the defendant and while in the discharge of such duties? "In the furtherance of the business of employer" means simply in the discharge of the duties of the employment, and the court properly told the jury that the defendant is responsible for the injury if caused by the wrongful act of the (95) employee while acting in the scope of his employment. In Ramsdenv. R. R., 104 Mass. (at p. 120), Gray, J., says: "If the act of the servant is within the general scope of his employment, the master is equally liable, whether the act is willful or merely negligent. Howev. Newmarsh, 22 Allen, 49; or even if it is contrary to an express order of the master. R. R., v. Darby, 14 Howard, 468." The rules is thus laid down in 2 Wood Railways, sec. 316 (at p. 1404, 2 Ed.): "Where the act is within the scope of the servant's authority, express or implied, it is immaterial whether the injury resulted from the result of his negligence, or from his willfulness and wantonness; nor is it necessary that the master should have known that the act was to be done. It is enough if it is within the scope of the servant's authority. Thus, where a servant of a railway company, employed to clean and scour its cars, and keep persons out of them, kicked a boy eleven years old from a railing while the cars were in motion, whereby he was thrown under the cars and killed, it was held that the act, although in nobody's line of duty, being done in the course of the servant's employment, the company was chargeable therefor," citing R. R. v. Hack, 66 Ill. 238, and other cases as authorities. Among many other cases almost on "all fours" with the present, are R. R. v. Kelly, 36 Kan. 655, in which it was held that, "Where a boy fifteen years old gets upon a freight train wrongfully and as a trespasser, for the purpose of riding without paying his fare, and is commanded by the brakeman to jump off the train while in dangerous motion, in the night time, and in obedience to that command, and in fear of being thrown off, jumps off the train and is run over and injured, the company is liable"; and it is further held that, whether the brakeman "acted wantonly and maliciously or merely failed to (96) exercise due care and caution, the railroad company is liable" for damages resulting from the brakeman's conduct, citing many cases. In *Page 90 Rounds v. R. R., 64 N.Y. 129, the defendant was held liable where the plaintiff jumped upon the platform of a baggage car to ride to a place where the cars were being backed to make up a train, this being against the regulations of the defendant, and the baggage-master knocked him off, and in falling, he fell upon some wood, rolled under the car and was injured, the Court holding that, "to make the master liable it is not necessary to show that it expressly authorized the particular act; it is sufficient to show that the servant was acting at the time in the general scope of his authority, and this, although he departed from his instructions, abused his authority, was reckless in the performance of his duty and inflicted unnecessary injury." In Lovett v. R. R., 9 Allen (Mass.), 557, it was held that where a boy of ten years old wrongfully got upon a street car, and the driver ordered him to jump off, while running at a dangerous speed, the company is responsible for the injuries sustained by the boy in doing so, unless it was found that the injury was caused by the boy's negligent manner of getting off. Another instance of liability for injuries sustained by a trespasser from the servant's violently and forcibly putting the trespasser off, is Carterv. R. R., 8 A. E. R. R. Cases, 347, which cites numerous precedents of like purport. But it is needless to multiply cases. All of them hold such ejectment is done by the servant in the general scope of his employment, and if done recklessly or wantonly and maliciously, and even if in a manner forbidden by the master's orders, the company is liable for the tortious act. The ground is that the proximate cause of the injury is not the trespasser's wrongfully getting on the cars, but the tortious manner in which the servant makes him get off, and that this act, (97) being in the general scope of the servant's employment, the master is liable.
In the present case, whether the child jumped off because ordered by the brakeman, or by reason of the hint of a lump of coal whizzing by his head, or was actually struck and knocked off, this mode of getting him off the moving car was tortious, and the defendant is liable for the injury caused thereby. 14 A. E., 822, 823, and cases cited in the notes thereto; Pierce on Railways, 278, 279; 99 Am. Dec., 282, and notes; Peck v. R. R.,70 N.Y., 587; R. R. v. Harris, 122 U.S. 597.
It is true the child was on the tender in violation of a town ordinance, as the defendant contends, but the penalty for this was a small fine and not a license to the defendant's servant to cripple him or kill him.
The defendant, however, earnestly contends that if the servant's act was malicious the company is not liable for negligence. If that theory ever obtained, the above authorities show that it was contrary to reason and has been duly and fully exploded. Besides, the company is not charged in this case with malice because of any alleged malice of its *Page 91 
agent, and whether, if it was, it could be held liable for punitive damages is not before us. It is certainly liable for compensatory damage for the injury sustained from the tort of its servant.
The brief of the learned counsel for the defendant strenuously insists that a case of this kind cannot be understood by the Court and justice properly administered unless we translate the action back into one of the old common-law forms of actions, and that when that is done it would be seen that the plaintiff cannot sustain his demand. This suggests the precedent of the physician, who, in a difficult case, proposed to give his patient something to throw him into fits, on the ground that he was infallible in curing fits. It was precisely because the old (98) division into forms of action lent itself to finespun metaphysical distinctions whereby the form of proceeding became more important than the subject-matter and led to frequent miscarriages of justice, that the common sense of an enlightened age swept the old system away, and for more than fifty years the discarded legal jargon of a former age has sounded strange, if referred to at all, at Westminster Hall, in which it grew up. In our own State the Constitution abolished the old system, and by statute we have substituted the simple requirement that the complaint shall contain "a plain and concise statement of the cause of action." Code, sec. 233 (2). That is the case here. We shall not delve in the debris of dead and forgotten centuries, nor disturb the dust that sleeps above the volumes of an outworn and long-rejected legal system. To do so would be to obscure the substantial justice which it should be the sole object of every legal inquiry to ascertain. We need not darken counsel by multitude of words, nor entangle ourselves in the scholastic disputations which once obtained in legal proceeding and very often defeated their object.
Here the plaintiff's intestate was admittedly run over and killed by the defendant's train. Upon the uncontroverted facts of this case, the fireman, as a matter of law, was acting in the scope of his general employment, and the court properly instructed the jury that if the boy was made to get off the car (though he was there wrongfully) by the act of the fireman, whether malicious or not, while the train was moving, so that the boy was killed in consequence of so doing, the defendant was liable for the damage caused by the negligent conduct of its lessee in thus operating its train.
The defendant further excepted "to the charge as given." This is a "broadside" exception which cannot be considered. This has been uniformly so held for a long series of years and in possibly more than fifty cases, and has been recently reaffirmed by Furches, J., (99) in Hampton v. R. R., 120 N.C. at p. 538, and S. v. Moore, ib., at p. 571; by Faircloth, C. J., in S. v. Ashford, 120 N.C. 588, and by *Page 92 Douglas, J., in S. v. Webster, 121 N.C. 586, and other recent cases, two of them at this term. Indeed, the statute (Code, sec. 550) is explicit, requiring the appellant to prepare "a concise statement of the case, embodying the instructions of the judge as signed by him, if there be an exception thereto, and the requests of the counsel for parties for instructions, if there be exception on account of the granting or withholding thereof, and stating separately in articles numbered the errors alleged." It would be so eminently unjust to an appellee to have an entire charge excepted to, without any specifications of the errors alleged therein, that he might prepare himself for argument thereof on appeal, and the decisions that such broadside exception will be disregarded here have been so uniform that we would feel impelled to adhere to so just and uniform a ruling, even if the statute law had not explicitly prescribed it. A careful consideration of the charge, shows, besides, that there is no error therein of which the defendant could complain.
The last exception, which is for refusal of judgment in favor of defendant upon the findings of the jury, needs no consideration beyond what is involved in the preceding discussion.
NO ERROR.
Cited: Adams v. R. R., 125 N.C. 566; Cook v. R. R., 128 N.C. 333,336; Perry v. R. R., 129 N.C. 335; Harden v. R. R., ib., 359; Palmer, v.R. R., 131 N.C. 252; Lewis v. R. R., 132 N.C. 387; McNeill v. R. R.,ib., 514; S. c., 135 N.C. 721; Jackson v. Tel. Co., 139 N.C. 354; Hayesv. R. R., 141 N.C. 198; Carleton v. R. R., 143 N.C. 47; Roberts v. R.R., ib., 178; Coal Co. v. R. R., 144 N.C. 748; Streator v. Streator,145 N.C. 339; Stewart v. Lumber Co., 146 N.C. 60, 64, 88; Jones v. R. R.,150 N.C. 477, 481; Cullifer v. R. R., 168 N.C. 311; Rivenbark v. Hines,180 N.C. 242.
(100)